John J. BACHOWSKI, Petitioner-Respondent,

v.

Margaret SALAMONE, Appellant-Petitioner.

Supreme Court

*No. 86–0281. Submitted on briefs February 10, 1987.—Decided June 19, 1987.*

(Also reported in 407 N.W.2d 533.)

398

For the appellant-petitioner there was a brief by *Michael B. Rick, Eugene E. Detert* and *Godsell, Weber, Bruch & Rick, S.C.,* Hales Corners.

For the petitioner-respondent there was a statement in lieu of brief by *Milton R. Bordow,* Milwaukee.

399

WILLIAM A. BABLITCH, J. Margaret Salamone (Salamone) appeals challenging the constitutionality of sec. 813.125, Stats. 1985, the "harassment injunction" statute. That statute sets forth the procedures for obtaining civil injunctive relief against a person who has allegedly violated the harassment statute, sec. 947.013(1).[1] Salamone argues the "harassment injunction" statute 1) fails to provide sufficient notice to prepare for the final hearing on the injunction, thereby violating her rights to due process, and 2) is unconstitutionally vague and overbroad. We find the statute does provide sufficient notice, and is neither vague nor overbroad. However, because the proof offered at the hearing did not conform to the conduct alleged in the petition and because the specific injunction issued in this case was overbroad, we conclude the statute was improperly applied. Accordingly, we reverse.

Salamone and Bachowski are neighbors. Approximately two years preceding Bachowski's petition for an injunction against Salamone, the two began feuding. The feud escalated in the summer and fall of 1985 and a number of their neighbors joined the fray. On December 5, 1985, Bachowski petitioned for a sec. 813.125, Stats., injunction ("harassment injunction")

---

[1] "**947.013 Harassment.** (1)   Whoever, with intent to harass or intimidate another person, does any of the following is subject to a Class B forfeiture:

"(a)   Strikes, shoves, kicks or otherwise subjects the person to physical contact or attempts or threatens to do the same.

"(b)   Engages in a course of conduct or repeatedly commits acts which harass or intimidate the person and which serve no legitimate purpose."

against Salamone. The statute is cited in full below.[2] The petition stated:

[2]"813.125 HARASSMENT RESTRAINING ORDERS AND INJUNCTIONS. (1) **Definition.** In this section, 'harassment' means any of the following:

"(a) Striking, shoving, kicking or otherwise subjecting another person to physical contact or attempting or threatening to do the same.

"(b) Engaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose.

"(2) **Commencement of action.** An action under this section may be commenced by filing a petition described under sub. (5)(a). No action under this section may be commenced by service of summons. Section 813.06 does not apply to an action under this section.

"(3) **Temporary restraining order.** (a) A judge may issue a temporary restraining order ordering the respondents to cease or avoid the harassment of another person, if all of the following occur:

"1. The petitioner files a petition alleging the elements set forth under sub. (5)(a).

"2. The judge finds reasonable grounds to believe that the respondent has violated sec. 947.013.

"(b) Notice need not be given to the respondent before issuing a temporary restraining order under this subsection. A temporary restraining order may be entered only against the respondent named in the petition.

"(c) The temporary restraining order is in effect until a hearing is held on issuance of an injunction under sub. (4). A judge shall hold a hearing on issuance of an injunction within 7 days after the temporary restraining order is issued, unless the time is extended upon the written consent of the parties or extended once for 7 days upon a finding that the respondent has not been served with a copy of the temporary restraining order although the petitioner has exercised due diligence.

"(4) **Injunction.** (a) A judge may grant an injunction ordering the respondent to cease or avoid the harassment of another person, if all of the following occur:

"1. The petitioner has filed a petition alleging the elements set forth under sub. (5)(a).

"My wife and I and neighbors who will be present at the hearing have been constantly harrassed (sic) by virtue of both the actions and conduct of the respondent, including many false charges made to the Police Department of Hales Corners, Wisconsin. In addition, physical damage to property has been caused by the conduct of the respondent."

On the day this petition was filed, the circuit court granted a temporary restraining order (TRO) *ex parte* based on the petition, pursuant to sec. 813.125(3), Stats. The TRO restrained and enjoined

"2. The petitioner serves upon the respondent a copy of a restraining order obtained under sub. (3) and notice of the time for the hearing on the issuance of the injunction under sub. (3)(c).

"3. After hearing, the judge finds reasonable grounds to believe that the respondent has violated sec. 947.013.

"(b) The injunction may be entered only against the respondent named in the petition.

"(c) An injunction under this subsection is effective according to its terms, but for not more than 2 years.

"(5) **Petition.** (a) The petition shall allege facts sufficient to show the following:

"1. The name of the person who is the alleged victim.

"2. The name of the respondent.

"3. That the respondent has violated sec. 947.013.

"(b) The clerk of circuit court shall provide simplified forms.

"(6) **Arrest.** A law enforcement officer shall arrest and take a person into custody if all of the following occur:

"(a) A person named in a petition under sub. (5) presents the law enforcement officer with a copy of a court order issued under sub. (3) or (4), or the law enforcement officer determines that such an order exists through communication with appropriate authorities.

"(b) The law enforcement officer has probable cause to believe that the person has violated the court order issued under sub. (3) or (4).

"(7) **Penalty.** Whoever violates a temporary restraining order or injunction issued under this section shall be fined not more than $1,000 or imprisoned not more than 90 days or both."

Salamone "from harassing John J. Bachowski in any manner" until the injunction hearing which was scheduled for December 12, 1985 at 10:30 a.m. On December 9, 1985, at 9:00 p.m., Salamone received notice of this hearing and a copy of the petition filed by Bachowski.

At the injunction hearing on December 12, Mrs. Bachowski and five neighbors testified concerning the incidents which precipitated the harassment petition. Mr. Bachowski did not testify. Review of the hearing testimony reveals that both Bachowski and Salamone may have engaged in inappropriate conduct toward each other. The neighbors and Mrs. Bachowski testified that Salamone repeatedly yelled at Bachowski, and stared at him and his family. Salamone asserted that the yelling was in response to obscene gestures and comments Bachowski made to her in the presence of her young children. It was also revealed at the hearing that charges against Bachowski for improper use of the telephone, stemming from obscene phone calls allegedly made to Salamone, were pending. The trial court acknowledged that Salamone might have a reciprocal claim for harassment and may also be entitled to an injunction under sec. 813.125, Stats. However, the trial court noted that without having filed a petition for such relief Salamone's testimony concerning the actions of Bachowski which "harassed" her was simply not relevant to disposition of Bachowski's injunction request.

The judge granted Bachowski's injunction concluding that Salamone "has no right to stand out on her driveway and yell at another neighbor no matter what the relationship between those parties is." The injunction enjoined Salamone for a period of two years from "harassing petitioner, having any contact with

petitioner or coming upon petitioner's premises." This appeal followed.

Salamone argues that the statute is unconstitutional and, alternatively, that it was improperly applied. We note that neither the trial court nor court of appeals have ruled on the constitutional issues presented in this case. Nevertheless, the constitutionality of a statute is a question of law which we review *de novo* without deference to the lower courts' decisions. *See State v. Ludwig,* 124 Wis. 2d 600, 607, 369 N.W.2d 722 (1985).

In reviewing the constitutionality of sec. 813.125, Stats., we recognize that there is a strong presumption that a legislative enactment is constitutional. *State v. Cissell,* 127 Wis. 2d 205, 214, 378 N.W.2d 691 (1985). The party challenging the constitutionality of a statute assumes a heavy burden of persuasion. This court has repeatedly stated that it is not enough that the challenger of a law

> ". . . establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973).

With these principles in mind, we turn to the constitutional challenges to sec. 813.125 raised in this appeal. We begin with the question of whether certain procedures set forth in sec. 813.125 violate the notice

requirements of the due process clause of the fourteenth amendment of the United States Constitution.

Salamone asserts that the summary procedures set forth in sec. 813.125, Stats., fail to allow sufficient time to prepare for the final hearing on the injunction, thereby denying her due process.

Under the statute a court may, upon the filing of a petition by a victim, issue an *ex parte* TRO ordering the respondent to "cease or avoid the harassment" of the victim. Section 813.125(3)(a), Stats. The judge must hold a hearing on the issuance of the requested injunction within seven days of the issuance of the TRO. Section 813.125(3)(b). One of the prerequisites to granting the injunction is that the court find that the petitioner has served upon the respondent a copy of the TRO and notice of the time for the hearing on the issuance of the injunction. Section 813.125(4)(a)3.

█

We acknowledge that no minimum notice period is specified in the statute but we must interpret the statute to avoid constitutional invalidity. *See State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 689, 239 N.W.2d 313 (1976) ("[g]iven a choice of possible interpretations, this court must select the construction that results in constitutionality rather than invalidity...."). Because an alternative construction would render the statute unconstitutional, we construe notice to mean "reasonable notice," which is all that is required by due process. *E.g., Jones v. Jones,* 54 Wis. 2d 41, 45, 194 N.W.2d 627 (1972). The notice must be "reasonably calculated to inform the person of the pending proceeding and to afford him or her an opportunity to object and defend his or her rights." *In Matter of Estate of Fessler,* 100 Wis. 2d 437, 447, 302 N.W.2d 414 (1981). There is nothing in the statute

which precludes the trial court from recessing the hearing until a later date if reasonable notice has not been provided to the respondent. In fact the statute precludes a judge from granting an injunction unless "notice," which we construe as meaning "reasonable" notice, has been given to the respondent. If a judge fails to delay the hearing to afford the respondent adequate time to prepare or grants the injunction when reasonable notice has not been given to the respondent, the judge's action may upon review be deemed an abuse of discretion. We conclude that the procedures set forth in the statute are sufficient to provide the type of notice due process requires.

We now turn to Salamone's vagueness challenge. A statute is "unconstitutionally vague if it fails to afford proper notice of the conduct it seeks to proscribe or if it encourages arbitrary and erratic arrests and convictions." *Milwaukee v. Wilson,* 96 Wis. 2d 11, 16, 291 N.W.2d 452 (1980). In *State v. Popanz,* 112 Wis. 2d 166, 332 N.W.2d 750 (1983) this court explained that "[t]he principles underlying the void for vagueness doctrine . . . stem from concepts of procedural due process." *Id.* at 172.

To survive a vagueness challenge a statute must be sufficiently definite to give persons of ordinary intelligence who wish to abide by the law sufficient notice of the proscribed conduct. *Id.* at 173; *Wilson,* 96 Wis. 2d at 16. A vague law "'may trap the innocent by not providing fair warning.'" *Popanz,* 112 Wis. 2d at 173 *quoting, Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). It must also permit law enforcement officers, judges and juries to enforce and apply the law without forcing them to create their own standards. *Id.* "The danger posed by a vague law is that officials

charged with enforcing the law may apply it arbitrarily or the law may be so unclear that a trial court cannot properly instruct the jury as to the applicable law." *Id.* at 173. However, it is not necessary in order to withstand a vagueness challenge, "for a law to attain the precision of mathematics or science...." *Wilson,* 96 Wis. 2d at 16.

Salamone contends that the statutory definition of harassment set forth in sec. 813.125(1)(b), Stats., fails to state with sufficient definiteness or certainty the specific conduct which is proscribed by the law. That section defines harassment as "[e]ngaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose." Section 813.125(1)(b). We reject Salamone's contention that this definition fails the vagueness test set forth above. Though the key words in this definition, "harass" or "intimidate" are not expressly defined in the statute, to "a person of ordinary intelligence" these words clearly connote more than mere bothersome or annoying behavior. *See, e.g., People v. Malausky,* 485 N.Y.S.2d 925, 928 (N.Y. Crim. Ct. 1985) ("immature, immoderate, rude or patronizing manner which annoys another is not enough ..." to establish a violation of criminal harassment statute).

Their meaning can be readily ascertained, by consulting a recognized dictionary. *E.g., State v. Wickstrom,* 118 Wis. 2d 339, 352, 348 N.W.2d 183 (Ct. App. 1984). "Harass" means to worry and impede by repeated attacks, to vex, trouble or annoy continually or chronically, to plague, bedevil or badger. *Webster's Third New International Dictionary* 1031 (1961). "Intimidate" means "to make timid or fearful." *Id.* at 1184. Moreover, their meaning is narrowed by the statute's

requirement that the acts which harass or intimidate must be accomplished by repeated acts or a course of conduct. Section 813.125(1)(b), Stats. Thus, it is clear that single isolated acts do not constitute "harassment" under the statute. *E.g., People v. Hotchkiss,* 300 N.Y.S.2d 405, 407 (N.Y. Civ. Ct. 1969). The definition of harassment further requires that the harassing and intimidating acts "serve no legitimate purpose." This is a recognition by the legislature that conduct or repetitive acts that are intended to harass or intimidate do not serve a legitimate purpose. Whether acts or conduct are done for the purpose of harassing or intimidating, rather than for a purpose that is protected or permitted by law, is a determination that must of necessity be left to the fact finder, taking into account all the facts and circumstances. *See* Model Penal Code sec. 250.4 comment 5, 368 (1980).

Yet another aspect of the statute narrows the meaning of "harassment." A TRO or injunction can only be obtained if the conduct was *intended* to harass. Section 813.125(3) and (4), Stats., requires that a judge find reasonable grounds to believe that the respondent violated sec. 947.013, the criminal harassment statute. That section explicitly requires "*intent* to harass or intimidate another person. ..." Section 947.013(1). (Emphasis added.)

The legislative history of secs. 813.125 and 947.013, Stats., sheds some light on the purpose and meaning of these statutes. According to the analysis of the legislation by the Legislative Reference Bureau, Wisconsin's harassment statute was based substantially on a New York statute. *See* Drafting File for 1983 Wis. Act 336, *see also* N.Y. Penal Law sec. 240.25 (McKinney 1987). That statute in turn was based on sec. 250.4 of the American Law Institute's Model

Penal Code. A review of the commentary accompanying New York's statute and the model code indicates that the purpose of the legislation was to extend to the individual the protections long afforded to the general public under disorderly conduct or breach of peace statutes. *See* Model Penal Code sec. 250.4 comment 1, at 360; N.Y. Penal Law sec. 240.25 Practice Commentary, 300 (McKinney 1987). In reviewing the statute and its history it is clear the legislature has sought to prevent repeated assaults on the privacy interests of individuals without unnecessarily infringing on their freedom to express themselves through speech and conduct.

The statute's history reveals that the legislature was attempting to define harassment with as much precision as the English language permits. The drafting file includes early drafts of the statute, modeled after the New York harassment statute, which contain much broader definitions of "harassment." *See* Drafting File for 1983 Wis. Act 336. The initial Assembly version of the bill defined "harassment" as,

> "1. Insulting, taunting or challenging another person in a manner likely to provoke a violent or disorderly response.
> "2. Striking, shoving, kicking or otherwise subjecting the other person to physical contact or attempting or threatening to do the same.
> "3. Following the other person in or about a public place.
> "4. Engaging in a course of conduct or repeatedly committing acts which harass, annoy, frighten or intimidate the other person and which serve no legitimate purpose." 1983 Assembly Bill 353.

Over the course of Assembly and Senate deliberations definitions (1) and (3) were dropped entirely and (4) was substantially narrowed. The legislature may have been aware that the term "annoy" had been held unconstitutionally vague by other jurisdictions, *e.g., Bolles v. People,* 541 P.2d 80, 82–83 (Colo. 1975), and in contrast, statutes using the term "harass" had been ruled sufficiently specific to survive constitutional challenges on vagueness grounds. *E.g., State v. Hagen,* 558 P.2d 750, 752 (Ariz. 1976); *Commonwealth v. Duncan,* 363 A.2d 803, 806–07 (Pa. Super. 1976).

We again emphasize that scientific precision in drafting is not always possible nor is it necessary for a statute to withstand a vagueness challenge. As the United States Supreme Court explained in the context of a vagueness challenge to an obscenity statute, "lack of precision is not itself offensive to the requirement of due process. '... [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices....' " *Roth v. United States,* 354 U.S. 476, 491 (1957). (Citation omitted.)

We also agree with the authors of the Model Penal Code that the requirements of an intent to harass and the absence of any legitimate purpose for the acts, render the harassment provisions of sec. 813.125, Stats., sufficiently precise to carry fair warning to the citizenry. As the Model Penal Code authors state:

> "Taken together, these elements of the offense should sufficiently flesh out its meaning to survive vagueness review. This conclusion is supported by

the fact that it is probably impossible to do any better. There is no realistic prospect of anticipating in a series of more specific provisions all the ways that persons may devise to harass others, and without a residual offense of this sort, many illegitimate and plainly reprehensible forms of harassment would not be covered." Model Penal Code sec. 250.4 comment 6 at 371. (Footnote omitted.)

It is clear from sec. 813.125, Stats., that chronic, deliberate behavior, with no legitimate purpose designed to harass another person is proscribed by the statute. We conclude that the legislature has defined the conduct proscribed by sec. 813.125 with sufficient specificity to meet constitutional requirements with respect to vagueness.

We now turn to Salamone's overbreadth challenge. A statue is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate. *Wilson,* 96 Wis. 2d at 19. The essential vice of an overbroad law is that by sweeping protected activity within its reach it deters citizens from exercising their protected constitutional freedoms, the so-called "chilling effect." We reject Salamone's argument that sec. 813.125, Stats., has a chilling effect on free speech. The intent requirement and the phrase "no legitimate purpose" make clear that protected expression is not reached by the statute. *See* Model Penal Code sec. 250.4 comment 6 at 371–72. It is not directed at the exposition of ideas but at oppressing repetitive behavior which invades another's privacy interests in an intolerable manner.

411

We conclude that the zone of conduct regulated by this statute is clear. It does not, by its terms, sweep within its ambit actions which are constitutionally protected so as to render it unconstitutionally overbroad.

We now address the question of whether the statute has been properly applied. We note that a constitutional statute may be improperly applied. *Cf. Wilson,* 96 Wis. 2d at 21 ("the fact that a law may be improperly applied or even abused does not render it constitutionally invalid.").

Salamone argues that the statute has been improperly applied in several respects: 1) the content of the notice was insufficient; 2) the proof at the hearing was insufficient; and 3) the injunction was overbroad. We will address each of these in turn.

### 1) THE CONTENTS OF THE NOTICE

Salamone claims that the notice was insufficient to apprise her of the nature of the claims and the evidence to be produced at the hearing, thereby leaving her to speculate about the charges she might have to defend against. We disagree.

As previously stated, due process requires that the notice provided reasonably convey the information required for parties to prepare their defense and make their objections. *Estate of Fessler,* 100 Wis. 2d at 446–47. We conclude that compliance with the requirements of sec. 813.125(5)(a), Stats., would provide adequate notice in this regard. That section states: "(5) Petition. (a) The petition shall allege facts sufficient to show the following: 1. The name of the person who is the alleged victim. 2. The name of the respondent. 3. That the respondent has violated s. 947.013." This section requires a petitioner to state facts and circumstances which describe and support the specific acts or

conduct which allegedly constitute the harassing behavior as defined by secs. 813.125(5)(a) and (b) and 947.013(1)(a) and (b). Significantly, the circuit court form which a petitioner must file to obtain a harassment TRO and injunction, requires the petitioner to specify "what happened when, where, who did what to whom." Thus, it would be insufficient, for example, pursuant to sec. 813.125(5)(a) for a petitioner to simply allege that he or she has been "harassed or intimidated" by the respondent.

In this case Bachowski alleged in his petition that he had been constantly harassed by the actions and conduct of Salamone. The alleged harassing acts specifically identified in the petition were that Salamone made false charges against him to the local police department and physically damaged his property. These specifically identified acts constitute the type of "facts" which must be alleged under sec. 813.125(5)(a), Stats. Accordingly, the notice provided was sufficient.

2) THE PROOF AT THE HEARING

At the hearing on the injunction, no evidence concerning property damage or false charges was offered. The testimony of Mrs. Bachowski and neighbors largely concerned Salamone's yelling at the Bachowskis. The judge stated at the hearing that Salamone's yelling across the street constituted harassment. There was no proof and there were no findings concerning the acts and conduct specified in Bachowski's petition—false charges and property damage. Given the disparity between what was alleged in the petition and what was offered and proven

at trial, we conclude that the proof in this case was insufficient as a matter of law.

### 3) THE INJUNCTION

The violation of an injunction issued under sec. 813.125, Stats., is a criminal offense. Substantial fines and imprisonment could result. Section 813.125(7). Accordingly, injunctions issued under this section must be specific as to the acts and conduct which are enjoined.

We conclude that the injunction issued in this case does not meet these standards. The judge restrained Salamone from "harassing petitioner, having any contact with petitioner or coming upon petitioner's premises." The enjoined conduct is described too broadly. The statute contemplates that the court will ultimately determine whether acts which allegedly harass a person do in fact constitute harassment under the statute. *See* sec. 813.124(4)(a)3, Stats. Only the acts or conduct which are proven at trial and form the basis of the judge's finding of harassment or substantially similar conduct should be enjoined.

In this case the judge concluded that Salamone's repeated yelling at Bachowski constituted harassment. The judge's order enjoins Salamone from "harassing" Bachowski or having "any contact" with him. This language, unfortunately, could proscribe conduct which is constitutionally protected, e.g., distributing campaign literature, or which simply would not constitute harassment under the statute, e.g., saying good morning to Mr. Bachowski or his family. Thus, we conclude the injunction is drafted too broadly and is therefore invalid.

In summary, we conclude that the statute is constitutional with respect to the notice required by

due process. The statute is neither vague nor over-broad. However, because the statute was improperly applied, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). I agree with the majority that the injunction issued in this case should be vacated, but I do not agree that the court needs to reach the constitutional question. The court has said that it will not generally decide constitutional questions if the case can be resolved on other grounds. *Labor and Farm Party v. Election Board*, 117 Wis. 2d 351, 354, 344 N.W.2d 177 (1984). I conclude that secs. 813.125(1)(b) and 947.013(1)(b), Stats. 1985–86, define harassment to encompass conduct and acts only, not verbal communication. Because this case involves only speech, the case does not fall within the statutes as I believe the statutes should be interpreted. If the statutes are interpreted to include speech, they are, in my opinion, unconstitutional.

## I.

Both sec. 813.125(1) and sec. 947.013(1) define harassment as follows:

> "(a)  Striking, shoving, kicking or otherwise subjecting another person to physical contact or attempting or threatening to do the same;" or
>
> "(b)  Engaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose."

I conclude that the words "course of conduct" and "repeatedly committing acts" in secs. 813.125(1)(b) and 947.013(1)(b) encompass only conduct, not speech. I rest this conclusion on the text and the legislative history of the statutes.

Looking first to the text of the statutes, I note that the dictionary defines the words "conduct" and "acts" as actions, performances and deeds, not as speech.

Looking next to the legislative history of the statutes, I conclude that the great weight of the evidence indicates that the legislature intended the words "course of conduct" and "repeatedly committing acts" to regulate conduct and not speech.

The first piece of evidence in the legislative history demonstrating that the Wisconsin legislature did not intend to include speech in the harassment statutes is that the Wisconsin legislature deliberately omitted from its definition of harassment both the New York's and the Model Penal Code's provisions defining harassment to include certain kinds of speech. As the majority correctly explains, secs. 813.125(1)(a), (b) and 947.013(1)(a), (b) are based substantially on a New York statute[1] which was in turn

---

[1]The New York statute provides:

**"Section 240.25 Harassment**

A person is guilty of harassment when, with intent to harass, annoy or alarm another person:

1. He strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same; or

2. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or

3. He follows a person in or about a public place or places; or

4. As a student in school, college or other institution of learning, he engages in conduct commonly called hazing; or

5. He engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.

based on sec. 250.4 of the American Law Institute's Model Penal Code.[2] *See* pp. 10–14. The Wisconsin legislature adopted only two provisions defining harassment, and both provisions—offensive touching and a course of conduct or repeated acts—do not on their face relate to verbal communications.

A second piece of evidence in the legislative history demonstrating that the Wisconsin legislature did not intend to include speech within the harassment statute is that sec. 250.4(5) of the Model Penal Code (set forth in note 2), upon which sec. 813.125(1)(b) and 947.013(1)(b) are based, does not regulate speech. The Commentary to the Model Penal Code explains that the phrase "course of alarming conduct" in sec. 250.4(5) of the Code encompasses only acts; the "core of the prohibition" in sec. 250.4(5) is "harassment by action rather than by communication." See American Law Institute, Model Penal Code, sec. 250.4, Comment 6, p. 371 (1980). All the examples the Commentary

---

Harassment is a violation."

New York Penal Code, sec. 240.25.

[2]The Model Penal Code, sec. 250.4, provides:

**"Section 250.4 Harrassment**

A person commits a petty misdemeanor if, with purpose to harass another, he:

(1)   makes a telephone call without purpose of legitimate communication; or

(2)   insults, taunts or challenges another in a manner likely to provoke violent or disorderly response; or

(3)   makes repeated communications anonymously or at extremely inconvenient hours, or in offensively coarse language; or

(4)   subjects another to an offensive touching; or

(5)   engages in any other course of alarming conduct serving no legitimate purpose of the actor."

gives to illustrate a course of alarming conduct are acts, not verbal communication. *Id.*[3]

Confirming this reading of the statute, the Colorado Supreme Court interpreted its statute which has language substantially similar to that in sec. 813.125(1)(b) and 947.013(1)(b), Stats. 1985–86, and sec. 250.4(5) of the Model Penal Code as prohibiting "conduct rather than communication." *People v. Norman,* 703 P.2d 1261, 1267 (Colo. 1985).

On the basis of the text and legislative history of the Wisconsin statutes, I conclude that the legislature did not intend to include verbal communications within the words "course of conduct" and "repeatedly committing acts" in secs. 813.125(1)(b) and 947.013(1)(b). Because this case involves verbal communication, it does not fall within the statutes. Accordingly I concur that the injunction should be vacated.

## II.

The majority needlessly reads a constitutional defect into the statutes by construing the statutes to cover verbal communications. As interpreted by the majority opinion sec. 813.125(1)(b) and sec. 947.013(1)(b) are, in my opinion, unconstitutionally vague and overbroad. Amends. I, XIV, U.S. Const.

When the legislature seeks to regulate conduct through resort to the criminal law, it must identify

---

[3]The Model Penal Code recognizes that "it may be possible that some instance of harassing conduct is so imbued with expressive content as to implicate first-amendment concerns, but such a case would probably be excluded by the statutory requirements that the action serve no legitimate purpose of the actor and that there be a purpose to harass." Model Penal Code, sec. 250.4, Comments, pp. 371–372.

the proscribed conduct definitely enough "to provide standards for those who enforce the laws and those who adjudicate guilt." *State v. Popanz,* 112 Wis. 2d 166, 173, 332 N.W.2d 750 (1983). These "standards cannot lie only in the minds of persons whose duty it is to enforce the laws," *id.* at 176, for "[d]efining the contours of laws subjecting a violator to a criminal penalty is a legislative, not a judicial, function." *Id.* at 177.

Where the legislature's regulation includes expression, "the standards of permissible statutory vagueness are strict." *N.A.A.C.P. v. Button,* 371 U.S. 415, 432 (1963).

The statutory provisions at issue in this case are "catchalls" designed to prohibit forms of harassment without specifically describing them. The drafters of the Model Penal Code emphasized that what made sec. 250.4(5) (upon which the Wisconsin provisions are based) constitutionally palatable was the fact that it proscribed action rather than communication and did not "sweep within its ban any significant area of protected speech." Model Penal Code, Commentary 6, pp. 371–72. As interpreted by the majority, however, the Wisconsin statutes lack this essential limitation. The drafters of the Model Penal Code recognized that if these catch-all provisions were to include speech, they must sketch more than the general outlines of the prohibited speech in order to survive a vagueness challenge.

The majority fails in its attempt to make the word harass definite by using the dictionary. Although this court traditionally employs the dictionary in construing statutes, the fact that a dictionary defines a term does not in itself make the term definite. The dictionary definition quoted by the majority, for instance,

equates "harass" with terms of equal breadth, such as "annoy" (which the majority itself recognizes, p. 410, has been found unconstitutionally vague by several courts).

Equally unsuccessful is the majority's reliance on other components of the statutory definition to reveal the hidden contours of the term harass. Two of the aspects of the statute on which the majority relies to "narrow" the meaning of the statute, multiplicity of harassing acts and intent to harass, can hardly clarify the meaning of the term "harass" since their meaning depends on the meaning of harass.

The majority appears to conclude that the third aspect of the statute, that harassing acts "serve no legitimate purpose," does not narrow the meaning of the statute.[4]

---

[4]The question arises whether the Wisconsin statute prohibits conduct, for example, of a debt collector whose purpose is to get paid (a legitimate purpose) or of an individual whose purpose is to gain the affection of another, even if a court may view the conduct as having the purpose to harass or intimidate. See *State v. Sarlund,* 139 Wis. 2d 386, 407 N.W.2d 544 (of even date).

The majority construes the "no legitimate purpose" requirement as a legislative recognition "that conduct or repetitive acts that are intended to harass or intimidate do not serve a legitimate purpose." At 10. Under the majority's interpretation, it appears that perhaps one cannot have two purposes: to harass and to achieve a lawful goal. The majority might be read as collapsing the two statutory elements, "intent to harass" and "no legitimate purpose," into one. The Model Penal Code makes clear that the two are separate elements of the offense of harassment.

Insight into how the "no legitimate purpose" requirement was designed to function is gained by examining the several subsections of sec. 250.4 of the Model Penal Code quoted at note 2. Only subsections (1) and (5) of sec. 250.4 include "no legitimate purpose" language; subsections (2), (3), and (4) do not include the "no legitimate purpose" language. See text of Code, note 2 *supra.*

On the issue of overbreadth, I conclude that the majority opinion has created "a 'danger zone' within which protected expression may be inhibited." *Dombrowski v. Pfister,* 380 U.S. 479, 494 (1965). "Because first amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *Button,* 371 U.S. at 433. Vague statutes that regulate speech, simply by virtue of the fact that the true extent of their restriction of speech is unknown, create a threat of prosecution of protected speech that unacceptably chills the exercise of free speech rights. Cf. *Houston v. Hill,* No. 86–243, — U.S. — (June 15, 1987) (the United States Supreme

---

The Commentary to the Model Penal Code explains that a person making "a single call for the purpose of legitimate communication cannot be punished under Subsection (1), even if it is made with the intent to harass. Although the phrase 'legitimate communication' invites judicial development, it plainly excludes many calls that are intended to annoy the recipient and that have precisely that effect . . . . A single call made to harass another into paying a debt could not be punished under Subsection (1) . . . Subsection (3) addresses the more complex situation of calls made with the intent to harass but also with the purpose of legitimate communication." Model Penal Code, sec. 250.4, Comment 2, p. 362.

The Commentary to the Model Penal Code further explains that the framers of subsection (5), the catch-all provision upon which the Wisconsin statute is based, included only conduct that has "no legitimate purpose," in an attempt to limit the broad reach of the subsection. "The import of the phrase [no legitimate purpose] . . . is broadly to exclude from this subsection any conduct that directly furthers some legitimate desire or objective of the actor. This element of the residual offense should limit its application to unarguably reprehensible instances of intentional imposition on another." Model Penal Code, sec. 250.4, Comment 5, p. 368.

For further discussion of the concept of legitimate purpose, see 1961 ALI Proceedings, pp. 225–226.

Court held that a city ordinance making it unlawful for any person to "in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty" was substantially overbroad because it broadly criminalized speech which interrupts a police officer without regard to whether the speech was protected).

In the end, the majority's conclusion that the statute is constitutional rests on the idea that clarity and specificity in the injunctions fashioned by judges to enforce the statute can somehow cure the constitutional difficulties inherent in the statute. Clarity in the injunctions, however, cannot cure the vagueness of the statute. Before a judge may issue an injunction the judge must find reasonable grounds to believe that the defendant has engaged in the conduct proscribed by sec. 947.013(1)(b). See sec. 813.125(4)(a)3. The judge's authority to enjoin any specific act therefore derives from the language of the statute and depends on the statute being explicit enough to tell the judge what conduct is proscribed. As the United States Supreme Court has said, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford,* 408 U.S. 104, 108–09 (1972)

In addition, the specificity of injunctions will not reduce the overbreadth problem, because the broad language of the statute will still chill the exercise of free speech rights. The permissibility of speech in an individual case under the statute will hang on a

possibly extended battle in the courts at both the trial and the appellate level. As the United States Supreme Court has said, the overbreadth doctrine is designed to avoid "making vindication of freedom of expression await the outcome of protracted litigation." *Dombrowski,* 380 U.S. 487.

In an increasingly crowded and interdependent world, this statute invites the judiciary to intervene routinely to an unprecedented extent in people's everyday speech in ordinary contexts—from the back yard to the school yard. It puts the judiciary in the business of sifting harassing from non-harassing speech and legitimate from illegitimate purposes. The judiciary must then translate that difficult sifting process into detailed rules of permissible speech, which are then incorporated into an injunction enforced by a criminal sanction.

This statute represents a good faith attempt by the legislature to grapple with a serious and difficult problem in our complex society. Nevertheless, if the legislature intends, as the majority holds, to use the criminal law to vindicate privacy interests against speech, the legislature must clearly identify the prohibited speech.

For the reasons set forth, I concur in the mandate but I do not join the opinion.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins this concurrence.