COURT OF APPEALS

DECISION

DATED AND FILED

October 1, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP1515-CR**

Cir. Ct. No. **2017CM131**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHAEL K. LORENTZ,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Pierce County: JOSEPH D. BOLES, Judge. *Affirmed*.

¶1     HRUZ, J.[1]   Michael Lorentz appeals a judgment, entered following a jury trial, that convicted him of one count of knowingly violating a domestic abuse injunction, contrary to WIS. STAT. § 813.12(8)(a), and three counts of

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

knowingly violating a child abuse injunction, contrary to WIS. STAT. § 813.122(11). Lorentz raises three arguments on appeal. First, he argues the circuit court erred by publishing the injunctions to the jury without redacting the terms "domestic abuse" and "child abuse." Second, he contends §§ 813.12(8)(a) and 813.122(11) are unconstitutional as applied to him because the underlying injunctions are unconstitutionally vague. Third, Lorentz argues the evidence at trial was insufficient to support his convictions.

¶2    Assuming without deciding that the circuit court erred by publishing the unredacted injunctions to the jury, we conclude any error in that regard was harmless. We further conclude that the injunctions are not unconstitutionally vague, and, as such, WIS. STAT. §§ 813.12(8)(a) and 813.122(11) are not unconstitutional as applied to Lorentz. Finally, we reject Lorentz's argument that the evidence at trial was insufficient to support his convictions. We therefore affirm.

## BACKGROUND

¶3    The following facts are undisputed. On July 16, 2014, Lorentz's former wife, Susan, obtained a domestic abuse injunction against him.[2] Among other things, the injunction required Lorentz to "avoid the petitioner's residence." On the same day, three child abuse injunctions were issued against Lorentz regarding three of the children he shared with Susan—Zane, Liam and Bennett. Each of those injunctions required Lorentz to "avoid the child's residence."

---

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use pseudonyms when referring to Lorentz's former wife and their children.

¶4     At all times relevant to this case, Susan, Zane, Liam and Bennett resided at a home located on 390th Avenue in Pierce County. The house is set back from 390th Avenue by some distance, and a field owned by a third party is situated between the house and the road. Nonetheless, the house is visible from 390th Avenue.

¶5     On May 14, 2017, Susan was outside in her yard with Zane, Liam, Bennett, and her older son, Jacob, when they saw Lorentz's truck drive by on 390th Avenue, past the entrance to Susan's driveway. Jacob estimated that the truck was 200 to 300 feet away from them. Lorentz did not stop, honk his horn, or turn into the driveway, but he drove by "very, very slowly." Susan and the children then went inside the house, and Susan called the police.

¶6     Pierce County sheriff's deputy Kellen Langer was dispatched to Susan's residence. During the course of his investigation, Langer spoke with Lorentz, who admitted that he had driven past Susan's residence. Lorentz told Langer that he drove past the residence because he missed his children, whom he had not seen in several years, and hoped that he might see them. Lorentz also told Langer that he knew the injunctions were in place, but he did not believe he had violated them by driving past Susan's residence because he remained on a public roadway.

¶7     The State filed a criminal complaint charging Lorentz with one count of knowingly violating a domestic abuse injunction, contrary to WIS. STAT. § 813.12(8)(a), and three counts of knowingly violating a child abuse injunction, contrary to WIS. STAT. § 813.122(11). Lorentz pled not guilty to each of the charges against him. He subsequently moved to dismiss those charges, arguing §§ 813.12(8)(a) and 813.122(11) were unconstitutional as applied to him because

the requirement in the injunctions that he avoid Susan and the children's residence was unconstitutionally vague. The circuit court denied Lorentz's motion to dismiss.

¶8   Before trial, Lorentz filed a motion in limine asking the circuit court to "prohibit any reference, in the presence of the jury, to the phrases 'child abuse' or 'domestic abuse.'" He argued the "type of injunction" that had been issued against him was irrelevant to the elements of the charged offenses. Lorentz further offered to "stipulate to the existence of the underlying injunctions," and he argued that such a stipulation precluded the State from introducing any evidence at trial regarding the types of injunctions. The State opposed Lorentz's motion, arguing the jury should be informed of the types of injunctions in order to provide context as to why Lorentz was required to avoid Susan and the children's residence.

¶9   The circuit court agreed with Lorentz that the State should not be permitted to use the phrases "child abuse" and "domestic abuse" at trial. The court determined, however, that the injunctions themselves were admissible, subject to a cautionary instruction advising the jurors that they were "only to consider the fact there is a court order in effect here, … not why it was issued." Notably, the injunction pertaining to Susan bore the title "INJUNCTION—Domestic Abuse," while the injunctions pertaining to children were titled "INJUNCTION—Child Abuse." The court denied Lorentz's request to redact the terms "child abuse" and "domestic abuse" from the injunctions.

¶10   The unredacted injunctions were ultimately published to the jury during trial, over Lorentz's objection. Immediately before they were published, the circuit court instructed the jury:

> These injunctions have some titles that contain language you are not to consider. In reviewing these, look at the orders themselves from the Court. …. These were the actual court orders in effect at the time of the incident. I want you to disregard any of the labels on the top of these documents that might label them as a certain type of injunction. You cannot use them as evidence.

¶11    Thereafter, the jury asked to see the injunctions again during its deliberations. After considering the parties' arguments, the circuit court denied the jury's request. The court instead instructed the jury:

> [T]he parties stipulated that the injunctions, Exhibits 6, 7, 8 and 9 were issued by the Court and were in effect at the time of the alleged crimes. The only portion of these injunctions that are relevant is paragraph two of these court orders. Paragraph two reads, paragraph two in each injunction reads, quote, the Court orders the Respondent to avoid the Petitioner's residence.

¶12    Lorentz did not testify in his own defense at trial. The jury ultimately returned guilty verdicts on all four counts, and Lorentz now appeals.

## DISCUSSION

### I. Publication of the unredacted injunctions

¶13    Lorentz argues the circuit court correctly ruled, as an initial matter, that the State could not use the phrases "domestic abuse" and "child abuse" at trial. He contends, however, that the court later erred by publishing the injunctions to the jury without redacting those terms. He argues the existence of

the injunctions was a "status element,"[3] and because he stipulated to the existence of the injunctions, the only relevant information they contained was the requirement that he avoid the residence where Susan and the children lived. He therefore argues that the court should have merely "admitted the requirement that Lorentz 'avoid the residence' without also informing the jury that the court had granted [injunctions] for domestic abuse and child abuse."

¶14    Assuming without deciding that the circuit court erred by publishing the unredacted injunctions to the jury, we conclude any error in that regard was harmless. An error is harmless when there is no reasonable possibility that it contributed to the defendant's conviction. *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). A "reasonable possibility" is "one which is sufficient to undermine confidence in the outcome of the proceeding." *State v. Patricia A.M.*, 176 Wis. 2d 542, 556, 500 N.W.2d 289 (1993). The burden is on the beneficiary of the error—here, the State—to prove beyond a reasonable doubt that the error is harmless. *State v. Agnello*, 226 Wis. 2d 164, 178, 593 N.W.2d 427 (1999). The harmless error inquiry presents a question of law that we review independently. *See State v. Magett*, 2014 WI 67, ¶29, 355 Wis. 2d 617, 850 N.W.2d 42.

¶15    Here, we conclude for four reasons that the State has met its burden of showing there is no reasonable possibility the publication of the unredacted injunctions contributed to Lorentz's convictions. First, as noted above, the circuit

---

[3] A "status element" is one that relates to a defendant's "legal status" and is therefore "dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against [the defendant]." *Old Chief v. United States*, 519 U.S. 172, 190 (1997). For instance, when a defendant is charged with operating a motor vehicle while intoxicated, the number of the defendant's prior countable convictions under WIS. STAT. § 343.307(1) is a status element. *See State v. Alexander*, 214 Wis. 2d 628, 646, 571 N.W.2d 662 (1997).

court made a pretrial ruling that the State could not use the terms "domestic abuse" and "child abuse" during trial. The State complied with that ruling, and neither of those terms was used in the jury's presence.

¶16    Second, immediately before the injunctions were published to the jury, the circuit court gave a cautionary instruction admonishing the jurors that they were to "disregard any of the labels on the top of these documents that might label them as a certain type of injunction" and they could not "use [those labels] as evidence." We presume that jurors follow the court's instructions. *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989).

¶17    Third, the jury saw the injunctions only once during the course of the trial. Although the jurors asked to see the injunctions again during their deliberations, the circuit court denied that request. The court instead informed the jurors that the parties had stipulated to the existence of the injunctions and the only relevant portions of the injunctions were the provisions requiring Lorentz to avoid Susan and the children's residence.

¶18    Fourth, as discussed in the final section of this opinion, ample evidence was introduced at trial to support Lorentz's convictions on each of the four charges. In light of that evidence, we cannot conclude there is a reasonable possibility that the isolated references to the terms "domestic abuse" and "child abuse" in the injunctions affected the outcome of Lorentz's trial. As such, any error in publishing the unredacted injunctions to the jury was harmless beyond a reasonable doubt and provides no basis to reverse Lorentz's convictions.

## II. As-applied challenges to WIS. STAT. §§ 813.12(8)(a) and 813.122(11)

¶19 Lorentz next argues that WIS. STAT. § 813.12(8)(a)—which prohibits someone from knowingly violating a domestic abuse injunction—and WIS. STAT. § 813.122(11)—which prohibits someone from knowingly violating a child abuse injunction—are unconstitutional as applied to him. The constitutionality of a statute presents a question of law that we review independently. *Mayo v. Wisconsin Injured Patients & Families Comp. Fund*, 2018 WI 78, ¶23, 383 Wis. 2d 1, 914 N.W.2d 678. In an as-applied challenge, "we assess the merits of the challenge by considering the facts of the particular case in front of us, 'not hypothetical facts in other situations.'" *Id.*, ¶24 (citation omitted). In other words, the party challenging the statute must show "that his or her constitutional rights were actually violated." *Id.* (citation omitted). We presume that the statute is constitutional, and the challenger bears the "very heavy burden" of overcoming that presumption. *Id.*, ¶¶25, 27.

¶20 Lorentz argues WIS. STAT. §§ 813.12(8)(a) and 813.122(11) are unconstitutional as applied to him because the underlying injunctions are unconstitutionally vague. To survive a vagueness challenge, the injunctions must be "sufficiently definite to give persons of ordinary intelligence who wish to abide by the law sufficient notice of the proscribed conduct." *See Bachowski v. Salamone*, 139 Wis. 2d 397, 406, 407 N.W.2d 533 (1987). The injunctions must also be specific enough to "permit law enforcement officers, judges and juries to enforce and apply the law without forcing them to create their own standards." *See id.* However, the injunctions need not "attain the precision of mathematics or science" in order to withstand a vagueness challenge. *See id.* at 407 (citation omitted).

8

¶21     The injunctions in this case required Lorentz to "avoid" the "residence" where Susan and the children lived.   Lorentz contends this requirement is unconstitutionally vague because the terms "avoid" and "residence"—which are not defined in the injunctions—are too indefinite to provide him with notice of the proscribed conduct.

¶22     We disagree.   As Lorentz concedes, we may consult a recognized dictionary in order to determine the common and accepted meanings of undefined terms.  *See Currier v. DOR*, 2006 WI App 12, ¶9, 288 Wis. 2d 693, 709 N.W.2d 520 (2005).   As relevant here, the New Oxford American Dictionary defines "avoid" as "keep away from," which even Lorentz recognizes as an applicable definition.[4]  *Avoid*, NEW OXFORD AMERICAN DICTIONARY (2001).   "Residence," in turn, is defined as "a person's house."  *Residence*, NEW OXFORD AMERICAN DICTIONARY (2001).   Applying these basic definitions, the injunctions clearly required Lorentz to "keep away from" the "house" where Susan and the children lived.   Lorentz's various attempts to complicate the plain meaning of these terms—especially in the context of this case—clearly fail.   Rather, the injunctions were sufficiently definite to give Lorentz notice of the proscribed conduct and to allow law enforcement, the circuit court, and the jury to enforce and apply the law without creating their own standards.  *See Bachowski*, 139 Wis. 2d at 406.

---

[4] The New Oxford American Dictionary provides several alternative definitions of the word "avoid," namely: (1) "stop oneself from doing (something)"; (2) "contrive not to meet (someone)"; (3) "(of a person or a route) not go to or through (a place)"; (4) "prevent from happening"; and (5) "repudiate, nullify, or render void (a decree or contract)."  *Avoid*, NEW OXFORD AMERICAN DICTIONARY (2001).   In this case, where the injunctions required Lorentz to "avoid" a specific place—i.e., Susan and the children's residence—we conclude the relevant definition of "avoid" is "keep away from."  *See id.*

9

¶23    In support of his claim that the injunctions are unconstitutionally vague, Lorentz raises a number of hypothetical fact scenarios and questions whether, under those circumstances, his conduct would have violated the injunctions:

> Must Mr. Lorentz have touched or trespassed upon a piece of property owned by his former wife or was he prohibited from being near the end of her driveway and her mailbox? If he was too close, how close is too close? Could he have driven on 390th [Avenue] but not within 100 feet of the driveway, a quarter of a mile away, a mile, 10 miles away?

¶24    This argument fails because "when the alleged conduct of the accused plainly falls in the prohibited zone sought to be proscribed by the [injunction] in question, the accused may not base a constitutional vagueness challenge on hypothetical facts."[5]  *See State v. La Plante*, 186 Wis. 2d 427, 433, 521 N.W.2d 448 (Ct. App. 1994).  Here, Lorentz's conduct clearly fell within the zone of activities proscribed by the injunctions.  Instead of keeping away from the house where Susan and the children lived, as required by the injunctions, Lorentz drove slowly past the house with the express goal of seeing the children.  It is undisputed that he came close enough to the residence that Susan and the children could see and identify his vehicle from their yard.  Any speculation about how close Lorentz could possibly have come to the house without violating the

---

[5] An exception to this rule exists when the defendant's vagueness challenge implicates a First Amendment right.  *See State v. Smith*, 215 Wis. 2d 84, 91, 572 N.W.2d 496 (Ct. App. 1997).  Lorentz does not argue, however, that any First Amendment right is implicated in this case.

injunctions is therefore immaterial, given that Lorentz's conduct clearly violated the injunctions.[6]

¶25     In the alternative, Lorentz argues that WIS. STAT. §§ 813.12(8)(a) and 813.122(11) are unconstitutional as applied to him because they are overbroad. "A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct which the state is not permitted to regulate." *Bachowski*, 139 Wis. 2d at 411. Lorentz contends the statutes at issue in this case are overbroad as applied to him because the language of the underlying injunctions "swept so broadly as to interfere with [his] fundamental right to travel."

¶26     As the State correctly notes, however, Lorentz failed to raise any argument regarding overbreadth in the circuit court. "Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. We therefore decline to address Lorentz's new argument that WIS. STAT. §§ 813.12(8)(a) and 813.122(11) are unconstitutional as applied to him because they are overbroad.

---

[6] In his reply brief, Lorentz claims the State "concedes" that the statutes at issue are unconstitutional as applied to him because the State's argument does not directly address some of the language used within his arguments nor does it reference certain words (i.e., "constitutional" or "unconstitutional") enough in its brief. This contention is specious. The State clearly disagrees with Lorentz's assertions regarding the unconstitutionality of the statutes, and it sufficiently argued as such in its brief.

## III. Sufficiency of the evidence

¶27    Finally, Lorentz argues that the evidence at trial was insufficient to support his convictions.    Whether the evidence was sufficient to sustain a defendant's conviction is a question of law that we review independently.  *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶28    We apply a "highly deferential" test when reviewing the sufficiency of the evidence to support a defendant's conviction.  *State v. Kimbrough*, 2001 WI App 138, ¶12, 246 Wis. 2d 648, 630 N.W.2d 752.  We may not substitute our judgment for that of the factfinder unless the evidence, viewed most favorably to the State and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).  We must therefore affirm "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt," even if we believe the trier of fact should not have found guilt based on the evidence before it.  *Id.*

¶29    In this case, in order to convict Lorentz of each of the four counts charged in the complaint, the State needed to prove: (1) that an injunction was issued against Lorentz; (2) that Lorentz violated the terms of the injunction; and (3) that Lorentz knew the injunction had been issued and knew his actions violated its terms.  *See* WIS JI—CRIMINAL 2040 (2011).  On appeal, Lorentz first contends the evidence at trial was insufficient to prove the second element—i.e., that he violated the terms of the injunctions by failing to "avoid" the "residence" where Susan and the children lived.

¶30 We disagree. At trial, the State introduced evidence that Lorentz drove slowly past Susan and the children's house on May 14, 2017. Susan and the children were outside in the yard at the time, and Lorentz came close enough and proceeded at such a slow speed that they could see and identify his vehicle. Jacob estimated that Lorentz's vehicle was 200 to 300 feet away from them. Lorentz subsequently admitted to deputy Langer that he had driven past the residence and that he had done so with the express purpose of seeing the children. Based on this evidence—none of which Lorentz disputed—the jury could easily find that Lorentz violated the injunctions by failing to avoid Susan and the children's residence.

¶31 Lorentz also argues the evidence was insufficient to establish the third element of the charged offenses—specifically, that he knew his actions violated the injunctions. Lorentz emphasizes that he told Langer he did not believe he had violated the injunctions by driving past Susan and the children's residence because he was on a public roadway. He contends the State "produced no evidence indicating why the jury should doubt [his] claim that he believed he was not violating the injunctions." "Given this record," Lorentz argues the State failed to prove that he knew his actions violated the injunctions.

¶32 Again, we disagree with Lorentz's assessment of the evidence. Lorentz does not dispute that he was aware of the injunctions, each of which required him to "avoid the … residence" where Susan and the children lived. Lorentz nevertheless intentionally drove slowly past the residence, and he conceded that he did so for the express purpose of seeing the children. Moreover, Lorentz came close enough to the house that Susan and the children, who were outside in the yard, could see and identify his vehicle. Based on this evidence, the jury could reasonably infer that Lorentz knew his actions violated the injunctions.

¶33     The jury was not required to accept Lorentz's self-serving statement to Langer that he did not believe he had violated the injunctions merely because he had remained on a public roadway.  "It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Poellinger*, 153 Wis. 2d at 506.  When the credible evidence supports more than one inference, we must accept the inference drawn by the trier of fact. *Id.* at 506-07.  Here, the jury was well within its province to infer from the totality of the evidence that Lorentz knew his actions violated the injunctions, notwithstanding his contrary statement to Langer.  We therefore reject Lorentz's claim that the evidence at trial was insufficient to prove he knowingly violated the injunctions.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.

14