In re the Commitment of James Lalor:

State of Wisconsin, Petitioner-Respondent,

v.

James Lalor, Respondent-Appellant.†

Court of Appeals

*No. 00–1957. Submitted on briefs January 23, 2003.—Decided February 26, 2003.*

2003 WI App 68

(Also reported in 661 N.W.2d 898.)

† Petition to review filed.

616

On behalf of the respondent-appellant, the cause was submitted on the briefs of *T. Christopher Kelly* of *Kelly & Habermehl, S.C.* of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Christopher G. Wren*, assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. NETTESHEIM, P.J. James Lalor appeals from an order for commitment pursuant to WIS. STAT. ch. 980 (1999–2000)[1] based on the trial court's finding that he is a sexually violent person. Lalor additionally appeals from an order denying his motion for a new trial.[2] Lalor argues that (1) the actuarial data relied upon by the State's experts was insufficient to support

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] We note that this appeal has been pending before this court for an unusual amount of time. The notice of appeal in this case was filed on July 17, 2000. Since that time, in addition to short extensions of time limits for filing of briefs, this case was (1) remanded to the trial court to permit Lalor the opportunity to file a motion for a new trial on grounds of ineffective assistance of counsel and have a hearing on that

a finding that he presented a substantial likelihood of reoffending, (2) the trial court violated his right to substantive due process when it failed to determine whether he is unable to control his behavior, and (3) the trial court failed to find that the State proved beyond a reasonable doubt that he was within ninety days of release when his commitment petition was filed.

¶ 2. We conclude that there was sufficient evidence to support a finding that Lalor is a sexually violent person within the meaning of WIS. STAT. ch. 980. We further conclude pursuant to *State v. Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, *cert. denied,* 123 S. Ct. 870 (U.S. Wis. Jan. 13, 2003) (No. 02–6652), that Lalor's right to substantive due process was not violated by the trial court's failure to make an express finding that he is unable to control his behavior.

¶ 3. Finally, we conclude pursuant to *State v. Thiel*, 2000 WI 67, ¶ 1, 235 Wis. 2d 823, 612 N.W.2d 94 (*Thiel I*), that the State must prove that Lalor was within ninety days of release when the petition in this case was filed. Consistent with *State v. Thiel*, 2001 WI App 52, ¶ 19, 241 Wis. 2d 439, 625 N.W.2d 321 (*Thiel II*), we remand for a limited hearing to give the State the opportunity to do so.

---

motion; (2) placed on hold pending the United States Supreme Court's decision in *Kansas v. Crane*, 534 U.S. 407 (2002); and (3) placed on hold pending the Wisconsin Supreme Court's decision in *State v. Laxton*, 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784, *cert. denied,* 123 S. Ct. 870 (U.S. Wis. Jan. 13, 2003) (No. 02–6652), in anticipation that it would address the effect of *Crane* on Wisconsin commitments. The final stay was lifted by order of this court dated July 2, 2002, following the release of the supreme court's decision in *Laxton* on July 1, 2002.

## *FACTS*

¶ 4. On February 8, 1999, the State petitioned the trial court for an order to detain Lalor alleging that he is a "sexually violent person" within the meaning of WIS. STAT. § 980.01(7) (1993–94). The State alleged that Lalor had been convicted of first-degree sexual assault of a child in 1992 and that he was within ninety days of his discharge from the sentence imposed. In support of the petition, the State relied on the report of Hugh Moore, Ph.D., a licensed psychologist who examined Lalor in September 1998.

¶ 5. Moore diagnosed Lalor with pedophilia and anti-social personality disorder. Moore reported that Lalor's test results on the Rapid Risk Assessment for Sexual Offense Recidivism (RRASOR) suggested an approximately 49.8% chance that he would reoffend in the next five years and a 73.1% chance that he would reoffend in the next ten years. Lalor's overall score of five, out of a possible six, indicated a substantial probability to reoffend. Moore's evaluation of Lalor's potential psychopathy using the Psychopathy Checklist-Revised (PCL-R) was consistent with the label of psychopath.

¶ 6. On February 15, 1999, following a probable cause hearing, the trial court made a finding that there was probable cause to believe that Lalor is a sexually violent person. The trial court ordered that Lalor remain in custody for a court-ordered evaluation.

¶ 7. Sheila Fields, Ph.D, conducted the court-ordered evaluation. Fields concluded that Lalor's "mental disorders create a substantial probability that he will commit a sexually violent act as defined by [WIS. STAT.] Chapter 980, and that he is therefore a proper subject for commitment as a sexually violent indi-

vidual." In arriving at her conclusion, Fields relied on Lalor's Department of Corrections records; the PCL-R; the Hanson (1997) RRASOR; the Minnesota Sex Offender Screening Tool (MnSOST/1997 version); the Minnesota Sex Offender Screening Tool-Revised (MnSOST-R/1998 version); the Violence Risk Appraisal Guide (V-RAG); and discussions and consultations with other individuals.

¶ 8. On May 27, 1999, the trial court appointed Dr. Lynn Maskel as a defense expert to assist Lalor. The matter went to trial in February 2000. Moore, Fields and Maskel testified. While we will later describe their testimony in more detail, Moore and Fields generally testified as to the actuarial data contained in their reports and their conclusions that there is a substantial probability that Lalor will reoffend. Maskel's testimony was limited to exposing the problems associated with the testing instruments employed by Moore and Fields in arriving at the actuarial data they relied on in evaluating Lalor.

¶ 9. In its written decision, the trial court found that Lalor had been convicted of sexually violent offenses in 1984 and 1992; Lalor suffers from a mental disorder; and Lalor is dangerous to others because his mental disorder creates a substantial probability that he will engage in acts of sexual violence. The trial court ordered that Lalor be committed to the custody of the Department of Social Services.

¶ 10. On March 1, 2000, Lalor filed a motion for reconsideration and a new trial on grounds that the trial court erroneously admitted the results of a plethysmograph test and the State had failed to prove beyond a reasonable doubt that Lalor's mental disorder

creates a substantial likelihood that he will reoffend. The trial court denied Lalor's motion on April 19, 2000. Lalor appeals.

## *DISCUSSION*

### *Reliance on Actuarial Data/Sufficiency of Evidence*

¶ 11. Lalor first argues that the State failed to prove beyond a reasonable doubt that there is a substantial likelihood that he will engage in sexually violent acts. Lalor frames this argument in terms of whether the State met its burden of proof, an issue we review de novo. *See Hallin v. Hallin*, 228 Wis. 2d 250, 258, 596 N.W.2d 818 (Ct. App. 1999) ("Whether a party has met its burden of proof is a question of law which this court may examine without giving deference to the trial court's conclusion."). Lalor acknowledges that in making this determination we defer to the credibility determinations made by the trial court unless the witness is incredible as a matter of law. *See id.* at 258–59.

¶ 12. Lalor contends that a de novo standard of review is appropriate because his challenge is not that the court erred in considering one expert more credible than another, but rather that the court erred by basing its decision on a misunderstanding of the statistical evidence presented by the expert witnesses. However, Lalor's specific contention that the expert testimony presented by Fields and Moore, premised on statistical evidence, "did not support the finding that Lalor is substantially likely to commit a future sex crime" presents a sufficiency of evidence issue.

¶ 13. In Wisconsin, scientific testimony is admissible if it is an aid to the jury or reliable enough to be probative. *Green v. Smith & Nephew AHP, Inc.*, 2000 WI App 192, ¶ 21, 238 Wis. 2d 477, 617 N.W.2d 881, *aff'd,* 2001 WI 109, 245 Wis. 2d 772, 629 N.W.2d 727. Once the relevancy of the testimony is established and the witness is qualified as an expert, the reliability of the evidence is a weight and credibility issue for the fact finder and any reliability challenges must be made through cross-examination or by other means of impeachment. *Id.* Because weight and credibility are left to the fact finder, our role is to determine whether the facts found are sufficient to sustain the trial court's finding that Lalor is a sexually violent person. In doing so, we view the evidence in the light most favorable to the commitment. *State v. Kienitz,* 227 Wis. 2d 423, 434, 597 N.W.2d 712 (1999). We will not overturn the verdict unless the evidence is so insufficient in probative value and force that no reasonable trier of fact could have found the person to be sexually violent beyond a reasonable doubt. *Id.*

¶ 14. At the outset, we address Lalor's challenge to the trial court's reliance on the testing instruments. We recently upheld the admission of testimony regarding actuarial instruments in *State v. Tainter,* 2002 WI App 296, ¶ 20, 259 Wis. 2d 387, 655 N.W.2d 538, noting the trial court's finding that the instruments were "the type of information commonly and reasonably relied up[on] by experts in the field of sex offender risk assessment to draw conclusions about future risk." There, as here, the defendant was free to cross-examine the State's experts regarding the instruments as to their weight and credibility. *Id.*

¶ 15. Here, Moore testified that he had conducted nine WIS. STAT. ch. 980 evaluations for the Wisconsin Department of Corrections. Moore met with Lalor for approximately two hours in September 1998. In preparation for that meeting, Moore reviewed Lalor's community corrections files, his social services file and his clinical services file. In arriving at his opinion, Moore considered, among other things, reports from other mental health professionals, Lalor's presentence investigation report describing his background, and the dynamics of his last offense.

¶ 16. During the course of that meeting, Moore asked Lalor questions pertaining to his prior sex offenses, how he felt about his previous diagnoses, his family, his drug and alcohol use, and his fantasies. With respect to his prior convictions, Lalor admitted raping a fifteen-year-old girl and molesting two of his nephews. Lalor told Moore that he had committed eighty sexual assaults with approximately ten to twelve victims. Moore additionally testified as to the results of the RRASOR and PCL-R documented in his report. Moore stated his opinion that Lalor is at "a very high likelihood to reoffend."

¶ 17. Fields testified that she has special training in WIS. STAT. ch. 980 work and that she has conducted approximately 132 ch. 980 evaluations. Lalor declined to meet with Fields, but Fields reviewed Lalor's records, including his social background, any psychological evaluations, any testing, correctional information, criminal information and any formal diagnoses.

¶ 18. Fields testified regarding the actuarial tests and results contained in her report. Fields determined that Lalor's score on the RRASOR indicated that approximately 50% of people with a similar score will

reoffend after five years and approximately 73% will reoffend after ten years. Like Moore, Fields determined that Lalor met the definition of a psychopath. On the MnSOST, Lalor scored significantly above the high risk mark and on the MnSOST-R, Lalor scored in the moderately high to extremely high range. On the V-RAG, which assesses the risk of reoffending for any type of violence, Lalor's scores suggested a "seven year reoffending rate . . . in the 55 percent range and ten years, 64 percent range." Fields testified to a reasonable degree of psychological certainty that Lalor suffers from paraphilia, pedophilia and anti-social personality disorder.

¶ 19. Fields relied on "a combination of a variety of characteristics" including:

> the elevation of the scores on the instruments . . ., the fact that Mr. Lalor has offended against not only children but people his own age but offended against—sexually offended against both males and females, that he's offended outside of his family, that he's used force genital to genital contact in his offending, that even after having been arrested, he goes on to offend and sometimes had at a fairly rapid rate after being released, that he does have this very serious . . . antisocial personality disorder, that he seems to have very poor control over all of his impulses, that he did not complete a long-term comprehensive treatment program for sex offending, that he does have this history, when he is released . . . outside of an institution . . . he seems to have an issue with alcohol.

Based on the above, Fields determined that Lalor is "dangerous and a substantial risk as a sex offender."

¶ 20. Maskel testified that she has consulted on at least twenty Wis. Stat. ch. 980 cases and had a current case load of thirty cases. Maskel testified that she is

very familiar with the actuarial instruments used in ch. 980 evaluations. Maskel testified as to problems with the MnSOST and the MnSOST-R, and the limitations of the V-RAG in predicting sexual violent recidivism. She also offered criticism regarding Fields' report and her diagnosis of Lalor as a psychopath. However, Maskel offered no opinion as to whether she disagreed with Fields' conclusion that Lalor qualified for ch. 980 commitment. Maskel testified on cross-examination that in conducting a ch. 980 evaluation in a case such as Lalor's, she would probably use the RRASOR but would not use the MnSOST. Maskel would also look to deviant sexual arousal and psychopathy but did not have an opinion as to whether Lalor qualifies as a psychopath.

¶ 21. In its written decision, the trial court noted the actuarial data submitted by the experts and the opinion of both Moore and Fields that there is a substantial probability that Lalor will reoffend sexually. Based on our review of the record, we conclude that there is sufficient evidence to support the trial court's finding.

¶ 22. Finally, we turn to Lalor's particular concern that the trial court misunderstood the data as reflecting Lalor's individual propensity to reoffend as opposed to the statistical frequency with which persons with a similar score have reoffended in the past. Lalor points to the trial court's statement that "the RRASOR suggests that there is approximately a 49.8% chance of sexual reoffense in the next five years and a 73.1% chance of sexual reoffense in the next ten years" and that there is a "high probability of reoffense when we look at percentages."

¶ 23. We disagree with Lalor's contention that the trial court did not "personalize" the expert testimony to

his individual propensities to reoffend. In its written decision, the court likened Lalor's RRASOR and MnSOST-R scores to those who produced similar scores and who had reoffended in the past. The court wrote that the RRASOR indicated, "*those in [Lalor's] position* would have a sexual offense recidivism rate of 50% after 5 years and 73% after 10 years" and that the MnSOST-R indicated, "*individuals similarly situated as [Lalor],* would sexually reoffend in a moderately high range."[3] (Emphasis added.) The court could not predict Lalor's propensities to reoffend in a vacuum. The court required the assistance of the expert testimony and the studies that such experts employ. The court then applied such evidence to Lalor's particular situation.

¶ 24. In the final analysis, the trial court found credible the testimony of two experts who determined that there is a substantial probability that Lalor will reoffend sexually. We review the trial court's findings in the light most favorable to commitment. Contrary to Lalor's argument, the record reflects that the trial court understood the data before it.

¶ 25. The evidence presented was sufficient in probative value and force such that a reasonable trier of fact could find beyond a reasonable doubt that Lalor was a sexually violent person. *See Kienitz*, 227 Wis. 2d at 434. We uphold the trial court's findings.

*Substantive Due Process*

¶ 26. Lalor next contends that his right to substantive due process was violated because the trial

[3] We acknowledge, as did the trial court, that there was some dispute as to Lalor's scoring on the MnSOST. However, Fields, who scored the test, testified that Lalor was nevertheless appropriate for commitment.

court did not determine whether he is unable to control his behavior. Whether Lalor's constitutional rights have been violated presents a question of law that we review de novo. *See Door County DHFS v. Scott S.*, 230 Wis. 2d 460, 465, 602 N.W.2d 167 (Ct. App. 1999).

¶ 27. Lalor relies on *Kansas v. Crane*, 534 U.S. 407, 413 (2002), for the proposition that in cases where lack of control is at issue, "there must be proof of serious difficulty in controlling behavior" and that the mental abnormality causing that difficulty "must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case."

¶ 28. Lalor acknowledges that our supreme court recently considered *Crane* in *Laxton*, holding:

> Wisconsin ch. 980 satisfies this due process requirement because the statute requires a nexus between the mental disorder and the individual's dangerousness. Proof of this nexus necessarily and implicitly involves proof that the person's mental disorder involves serious difficulty for the person to control his or her behavior. The definition of a sexually violent person requires, in part, that the individual is "dangerous *because* he or she suffers from a *mental disorder that makes it substantially probable that the person will engage in acts of sexual violence*." WIS. STAT. § 980.01(7) (emphasis added). As we recognized in [*State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995)], these statutory requirements do not sweep too broadly. The nexus—linking a mental disorder with dangerousness by requiring that the mental disorder predispose the individual to engage in acts of sexual violence—narrowly tailors the scope of ch. 980 to those most dangerous sexual offenders whose mental condition predisposes them to re-offend.

> We conclude that the same nexus between the mental disorder and the substantial probability that the person will engage in acts of sexual violence, necessarily and implicitly requires proof that the person's mental disorder involves serious difficulty for such person in controlling his or her behavior. It is settled law that "substantially probable" means "much more likely than not." *State v. Curiel*, 227 Wis. 2d 389, 406, 597 N.W.2d 697 (1999). Thus, proof that due to a mental disorder it is substantially probable that the person will engage in acts of sexual violence necessarily and implicitly includes proof that such person's mental disorder involves serious difficulty in controlling his or her sexually dangerous behavior. Chapter 980, therefore, satisfies due process requirements. Proof that a person is sexually violent necessarily and implicitly includes proof that the person's mental disorder includes serious difficulty in controlling his or her behavior, and this requisite proof distinguishes a dangerous sexual offender who has serious difficulty controlling his or her behavior from a dangerous but typical recidivist. Chapter 980 is narrowly tailored to meet compelling state interests.

*Laxton*, 2002 WI 82 at ¶¶ 22–23. Lalor preserves this issue for further review, arguing that the *Laxton* holding is incorrect. Lalor argues that it is not inevitable that a person who has a mental disorder such as pedophilia and who has committed sex crimes in the past will have serious difficulty controlling his or her behavior.

¶ 29. Lalor acknowledges that this court is bound by the opinions of our supreme court, *see Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997), but contends that *Laxton* and *Crane* are in conflict and thus, we are governed by the United States Supreme Court ruling, *see State v. Jennings*, 2002 WI 44, ¶ 18, 252 Wis. 2d 228, 647 N.W.2d 142. However, *Laxton*

discussed *Crane* and expressly found that WIS. STAT. ch. 980 law complies with the holding in *Crane*. Absent a conflict, we remain bound by *Laxton*.[4]

¶ 30. We conclude that Lalor was not denied his right to substantive due process by the trial court's failure to make an express finding that he is unable to control his behavior.

*Proof of Release Date*

¶ 31. In *Thiel I*, our supreme court held that the State is required to prove beyond a reasonable doubt "that the subject of the petition is within 90 days of release or discharge from a sentence imposed on the basis of a sexually violent offense." *Thiel I*, 2000 WI 67 at ¶ 1. Because Lalor's case had not been finalized prior to the release of *Thiel I*, Lalor argues that it applies retroactively and his commitment must be reversed because the court did not find that the State proved beyond a reasonable doubt that he was within ninety days of release when his commitment petition was filed.

¶ 32. The State concedes that the record does not contain any evidence regarding the date of Lalor's discharge and that *Thiel I* should be applied retroactively to Lalor's commitment proceedings. However, the State contends that reversal is not appropriate. Rather, the State argues that consistent with our decision in *Thiel II*, the case should be remanded for an evidentiary hearing confined to the issue of the timeliness of the petition. *Thiel II*, 2001 WI App 52 at ¶¶ 9, 30.

---

[4] We note that Lalor alternatively argues that this case is distinguishable from *Laxton* because the trial court in this case relied on statistical evidence that was insufficient to show that Lalor is likely to reoffend. Because this argument is addressed earlier in this decision, we do not address it again here.

¶ 33. In *Thiel II*, we remanded the case for an evidentiary hearing because the trial court, the State and Thiel all "shared the mistaken belief that it was not necessary to prove beyond a reasonable doubt that Thiel was within ninety days of release." *Id.* at ¶ 30. Lalor argues that there was no shared mistaken belief in this case and that there would be no justification for holding such a belief because a prudent prosecutor would have recognized the necessity of proving the ninety-day element based on *State v. Kienitz*, 227 Wis. 2d 423, 429 n.6, 597 N.W.2d 712 (1999); and *State v. Curiel*, 227 Wis. 2d 389, 396 n.4, 597 N.W.2d 697 (1999), both decided before his trial.

¶ 34. Lalor relies on our statement in *Thiel II* that the supreme court in *Thiel I* observed "the result . . . was preordained because both [*Kienitz*] and [*Curiel*] correctly stated the law that the State had the burden of proving beyond a reasonable doubt all of the allegations in the petition for commitment, including that the person was within ninety days of discharge." *Thiel II*, 2001 WI App 52 at ¶ 3. However, even post-*Kienitz* and *Curiel*, there was uncertainty regarding the question of whether the State must affirmatively prove that the subject of a WIS. STAT. ch. 980 commitment petition is within ninety days of release or discharge. This is evidenced by our certification of that issue in *Thiel I*, the supreme court's acceptance of that certification, and the resolution of the uncertainty in *Thiel I*. We therefore reject Lalor's assertion that this issue was resolved with certainty prior to *Thiel I*.

¶ 35. Consistent with our decision in *Thiel II*, we conclude that the proper remedy in this case is to remand for an evidentiary hearing limited to the issue of whether the State can prove beyond a reasonable

doubt that Lalor was within ninety days of his release at the time the petition was filed. *See Thiel II*, 2001 WI App 52 at ¶¶ 30–31.[5]

## CONCLUSION

¶ 36. We conclude that there was sufficient evidence to support a finding that Lalor is a sexually violent person within the meaning of WIS. STAT. ch. 980. We further conclude pursuant to *Laxton* that Lalor's right to substantive due process was not violated by the trial court's failure to expressly find that he is unable to control his behavior. Finally, we conclude pursuant to *Thiel I* that the State must prove that Lalor was within ninety days of release when the petition in this case was filed. Consistent with *Thiel II*, we remand for a limited hearing to determine whether the State is able to do so.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded.

---

[5] We note that Lalor preserves his right to challenge the remand on double jeopardy grounds. This court has addressed and rejected the applicability of the Double Jeopardy Clause to a remand limited to providing the State the opportunity to present competent evidence regarding a release date. *State v. Thiel*, 2001 WI App 52, ¶ 30, 241 Wis. 2d 439, 625 N.W.2d 321 (*Thiel II*).