COURT OF APPEALS
DECISION
DATED AND FILED

March 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1979**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2021CV1558**

**IN COURT OF APPEALS
DISTRICT IV**

PETITIONER,

　PETITIONER-RESPONDENT,

V.

BRADLEY TRUDELL,

　RESPONDENT-APPELLANT.

　　　　APPEAL from a judgment and an order of the circuit court for Dane County:  CHRIS TAYLOR, Judge.  *Affirmed*.

　　　　Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. § 809.23(3).**

　　　　¶1　　PER CURIAM.　Bradley Trudell appeals a harassment injunction issued by the circuit court and also the court's order denying his motion for

reconsideration of the injunction. Trudell argues that the evidence presented at the injunction hearing was not sufficient to support the injunction and that the circuit court erroneously exercised its discretion in defining the scope of its restrictions. Separately, he argues that the court erroneously exercised its discretion in denying his motion for reconsideration. We affirm on each issue.

## BACKGROUND

¶2      On July 6, 2021, the petitioner filed a petition for a harassment injunction against Trudell under WIS. STAT. § 813.125 (2021-22).[1] Accompanying the petition was a detailed affidavit of the petitioner. On the same day, a court commissioner issued a temporary restraining order and notice that an injunction hearing would be held before the circuit court on July 19. On the afternoon of July 11, a sheriff's deputy personally served on Trudell the petition, a temporary restraining order, and the notice of the hearing. This was the Sunday eight days before the scheduled hearing on Monday, July 19.[2]

¶3      On July 16, Trudell, who is an attorney and was then representing himself, filed a detailed response to the petitioner's affidavit. This included attachments purporting to reflect Trudell's personal "smartphone location data" for three dates; the attachments were offered as purported proof that Trudell's cell phone, and therefore Trudell himself, had not been at the specified places at the specified times that were alleged in the petition.

_____

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] In his opening brief Trudell states that he was served on July 12, but the certificate of service in the record reflects personal service on July 11 (with return of the service on July 12), and neither in the circuit court nor now on appeal does Trudell dispute the accuracy of any aspect of the certificate.

¶4      At the injunction hearing in the circuit court on July 19, the petitioner appeared by counsel and Trudell represented himself. The petitioner and Trudell testified, but neither called any other witnesses.

## Petitioner's Account

¶5      Petitioner testified that all of the averments contained in her affidavit attached to the injunction petition were "true and correct." Trudell did not object to this form of proof at the hearing and does not object on appeal. The following are among the petitioner's allegations contained in the affidavit, her testimony at the injunction hearing, or both.

¶6      The petitioner and Trudell previously lived together, during the course of a 15-year relationship. At points in the relationship, Trudell "would scream at me and push me down at times during arguments."

¶7      On the morning of a work day in June 2015, during an argument, Trudell "shoved me and I fell … and hit a chair." "[I]mmediately" after this, the petitioner "ended the relationship and moved out" from the residence that they shared and shortly thereafter she moved into a separate house in Dane County. The petitioner told friends and her mother about the shoving incident around the time it occurred.

¶8      After the petitioner and Trudell separated, in July-August 2020, they commenced and resolved a family court proceeding; the resolution included a schedule covering shared custody and placement of their two children (aged 16 and 12 at the time of the injunction hearing).

¶9      "Beginning in the fall of 2020," Trudell "began sitting in his car outside my home," "both on his days of placement with our children … and also on

days he does not have placement." He did this despite the fact that Trudell had "no reason" to be in the petitioner's village of residence unless he was picking up or dropping off one of their children pursuant to the shared placement agreement.

¶10     This included an incident in which he parked down the street from her house at "mid-morning" on April 27, 2021, which was "not his day of placement." At the hearing, the petitioner relied in part on a photograph she said she had taken of his car at that time.

¶11     On June 5, 2021, which was a placement day for Trudell, he arrived at the petitioner's house in the evening "unannounced" and, when the petitioner did not come to the door in response to Trudell ringing the doorbell, he "threatened to come into my home if our oldest [child] would not come out," and then looked in the windows of the house and took photographs. "It also appeared that [Trudell] was trying to use the garage door access panel at one point."

¶12     After this, Trudell "began to" park his car near the house of one of the petitioner's neighbors, "where there is a blind spot" in the field of view of security cameras that the petitioner had installed at her house.

¶13     On June 9, 2021, the petitioner was watching one of their children play in an outdoor athletic event when Trudell "brought his chair over to sit" about three feet from the petitioner "and stared at me," even though Trudell "never sits that close to me." "[I]t was terrifying…. [H]e keeps finding ways to impede every aspect of my life to get in front of me, under my skin." "And I was like, 'I'm not going to sit here and let him continue to do this.' And so I left."

¶14     On the evening of June 11, 2021, as the petitioner was driving on a state highway toward her house, Trudell drove his car behind hers, following her

onto an exit road off the highway before taking a different route. Trudell had "no business" driving behind her, given the location of his residence.

¶15 On July 3, 2021, Trudell brought the two children to a church at which the petitioner was attending a religious service, sat in the same four-person pew with the petitioner and her children, and "never said a word to [the petitioner] during" a one-hour service "and just stared" at the petitioner. This was despite Trudell not being "a member of the church" and having not attended a service there since 2019. After this incident, the petitioner filed the injunction petition.

¶16 On July 10, 2021—before a deputy served Trudell with the restraining order in this case, but after Trudell had seen a copy of it attached to a filing in the family court case—the petitioner participated in a running race at Devil's Lake, in Sauk County, while Trudell had placement of the children. Trudell brought the children close to where the petitioner was participating in the race. "[S]howing up at my race[] … just seemed like it was meant to intimidate me, poke at me, let me know that he knows what's going on."

¶17 On July 14, after Trudell was served with the restraining order, he started uncharacteristically texting the petitioner regarding the children, which she considered to be an attempt to violate the restraining order. "[H]e switches from in-person [harassment] to texting."

**Trudell's Account**

¶18 Trudell testified in part as follows.

¶19 At no time did he scream at or "push … down" the petitioner.

5

¶20 He did not, beginning in the fall of 2020, sit in his car near her house. On this point, he directed the circuit court to "my smartphone GPS location … data records," in the form of hardcopy exhibits, as proof of his actual locations when he was allegedly harassing the petitioner.

¶21 Regarding the June 5, 2021 incident at the petitioner's house, Trudell "never mentioned or implied use of force," but instead only "said that [Trudell] would … come in and get" a child "with petitioner's express permission." He took the photographs for potential use in the family court proceeding, "to show the court … that she was actually harboring [one of their children] on my placement day." Trudell acknowledged on cross examination that he had not contacted the petitioner before he arrived at her house that day and that he did not attempt to contact her with his phone once he was outside the house.

¶22 Regarding the allegation that Trudell parked in a "blind spot" in the field of view of security cameras, Trudell testified that the pile-up of snow on the street in the area of the driveway sometimes required him to park a bit away from the petitioner's house when he was dropping off or picking up the children.

¶23 Regarding the June 9, 2021 incident at the athletic event, "I never stared at [the petitioner]. I never looked in her … direction," and in any case a relative of the petitioner was sitting between the two of them. Further, the petitioner left the game for another appointment, not because she was bothered or intimidated by him.

¶24 Regarding the evening of June 11, 2021, when Trudell allegedly followed behind the petitioner's car, Trudell denied doing this and testified that his exhibits purportedly reflecting smartphone GPS data provided "definitive proof"

that his phone was not in those locations that evening and therefore he was not at those locations.

¶25 Regarding the July 3, 2021 church incident, given prior communications between the petitioner and Trudell, "it should not have been a surprise whatsoever [to the petitioner] that [Trudell] showed up to church" with the two children.

¶26 Regarding Trudell's texts to the petitioner on July 14, after he was served with the restraining order, Trudell "apologize[d] to the petitioner and to the Court for" what he called "the technical violation of the" restraining order, but testified that he "only texted the petitioner regarding legitimate placement issues."

**Circuit Court Rulings**

¶27 The circuit court determined that Trudell "has engaged in a course of conduct or repeatedly committed acts which harass or intimidate" the petitioner and which "serve no legitimate purpose." This determination was based primarily on the testimony of the petitioner, whom the court found "to be a very credible witness."

¶28 The injunction has a term of four years and in part enjoins Trudell from visiting the subdivision in which the petitioner resides, including traveling on three identified streets in the area of the petitioner's house. But Trudell is allowed to have contact with the petitioner when the contact is "solely for the purpose of communication regarding custody and placement of their minor children and only through Our Family Wizard, or as permitted or required by the family court presiding over" the family court action.

¶29    Trudell, newly represented by counsel, filed various pleadings in support of a motion to reconsider, as summarized below. The petitioner filed pleadings opposing the motion for reconsideration. The court held a hearing on the motion for reconsideration and denied the motion.

¶30    Trudell appeals the injunction and denial of his motion to reconsider, with both sides represented by counsel on appeal.

## DISCUSSION

¶31    We address the three issues raised by Trudell in the order in which he presents them, adding additional background as necessary.

### I.    SUFFICIENCY OF THE EVIDENCE

¶32    Trudell argues that the circuit court made clearly erroneous factual findings and did not properly take into account the dynamics created by the fact that, during relevant time periods, he and the petitioner lawfully shared placement of their children. As a result, Trudell contends, when one strips away the clearly erroneous factual findings, the evidence at the injunction hearing "showed that at worst" Trudell was only "occasionally present" in the area of the petitioner and "that when he believed that his placement time with his [child] was being intentionally withheld from him, [Trudell] took reasonable steps to ensure that evidence of this withholding would be available to him for use in pursuing court action regarding said withholding."

¶33    The petitioner argues that the circuit court made no clearly erroneous findings of fact and that the evidence supported its decision that, as the petitioner puts it, "Trudell had a significant pattern of appearing where [p]etitioner was without any valid reason to be there and served no basis other than to harass" the

8

petitioner. We summarize pertinent legal standards, provide additional background, and then explain why we conclude that the evidence was sufficient.

### A.    Legal Standards

¶34    A circuit court "may grant" a harassment injunction under WIS. STAT. § 813.125 if the court finds "reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." Sec. 813.125(4)(a)3.    Pertinent here, under § 813.125(1)(am)4.b., harassment occurs when the respondent "[e]ngag[es] in a course of conduct or repeatedly commit[s] acts which harass or intimidate another person and which serve no legitimate purpose."

¶35    "[I]t is clear that single isolated acts do not constitute 'harassment' under the statute." ***Bachowski v. Salamone***, 139 Wis. 2d 397, 408, 407 N.W.2d 533 (1987).[3]    Further, there must be proof of conduct that is "more than mere bothersome or annoying behavior." ***Id.*** at 407.

¶36    Appellate review of a circuit court's decision to issue a harassment injunction presents a mixed issue of fact and law. *See **Welytok v. Ziolkowski***, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359.    "We will not set aside the circuit court's factual findings unless they are clearly erroneous." ***Id.***    "We independently review the circuit court's conclusion, based on the established facts, whether such reasonable grounds exist." ***Id.***

---

[3] Our supreme court in ***Bachowski v. Salamone***, 139 Wis. 2d. 397, 408, 407 N.W.2d 533 (1987), addressed a constitutional challenge to the 1985-86 version of WIS. STAT. § 813.125, interpreted in light of standards contained in the 1985-86 version of WIS. STAT. § 947.013(1). *See **id**.* at 400.    But neither party directs us to any change in statutory language since that time that could alter our supreme court's interpretations on the points cited in the text.

¶37     The issue of whether alleged conduct was "done for the purpose of harassing or intimidating" presents an issue of fact; it "is a determination that must of necessity be left to the fact finder, taking into account all the facts and circumstances." *Bachowski*, 139 Wis. 2d at 408.

¶38     When reviewing a challenge to the sufficiency of the evidence supporting an injunctive order, we review the evidence in the light most favorable to the order. *See State v. Lalor*, 2003 WI App 68, ¶13, 261 Wis. 2d 614, 661 N.W.2d 898. An order will not be overturned unless the evidence is so insufficient in probative value and force that no reasonable trier of fact could have found the elements necessary to support the issuance of an injunction. *Id.*

### B.     Additional Background

¶39     We now explain in more detail the reasons the circuit court gave in support of its decision to issue the injunction.

¶40     The circuit court said that it found the petitioner to "be a very credible witness," who established through her testimony that Trudell had "incidents of" "showing up at [the petitioner's] home, uninvited, outside of placement periods" beginning in the fall of 2020. The court credited the evidence that Trudell "was in [the petitioner's] neighborhood" when "there was no basis for him to be in her neighborhood," and deemed these to have been "harassing gestures." In contrast, the court found that Trudell was not credible when he denied that he had been in the places where the petitioner testified that he had been.

¶41     Regarding the April 27, 2021 incident, the court credited the petitioner's identification of Trudell's car being parked on the street near her house at a time when Trudell denied doing this. The court emphasized the incident of

10

June 5, 2021, finding that Trudell went "on the property" when he was aware that the petitioner "was home," with Trudell "going into the backyard, taking [photographs] through her windows."

¶42 Regarding the conflicting testimony regarding Trudell allegedly following the petitioner's car, the circuit court credited the petitioner's testimony and rejected Trudell's testimony.

¶43 The circuit court also considered it to be part of "a pattern of conduct" that Trudell brought the children to the petitioner's Devil's Lake running race, after Trudell had seen a copy of the restraining order as part of the family court proceeding, and the court found that "there doesn't seem to be a good explanation" for him to have gone to her running race.

### C. Analysis

¶44 Trudell fails to persuade us that the circuit court committed clear error in any of its fact finding, including the court's findings that Trudell on several occasions intended to harass the petitioner. *See Welytok*, 312 Wis. 2d 435, ¶23. This largely defeats the only points that Trudell offers on this issue. His arguments boil down to the proposition that all that remains when clearly erroneous facts are removed from the analysis is non-harassing conduct with legitimate purposes. Some of Trudell's arguments are difficult to track, but we now address them as best we understand them.

¶45 Trudell seems to suggest that the circuit court made inconsistent factual findings, because the circuit court "found that [the petitioner] was at least initially unbothered by" seeing Trudell's car parked near her house (at some time not specified in Trudell's argument), but the court still found that his parking near

her house in the circumstances described by the petitioner "constituted harassment." Trudell fails to provide a record citation to accompany this point and more generally fails to explain any inconsistency in relevant findings made by the court. We reject this argument on those grounds.

¶46    Trudell points to the fact that the circuit court observed that the photographs produced as exhibits at the injunction hearing by the petitioner, which the petitioner testified showed Trudell's car at various locations, lacked enough detail to confirm that it was his car or that he was in the car. But it does not matter because the court credited the petitioner's testimony that she saw and recognized his car in each instance, without reference to the quality of the photos.

¶47    Trudell suggests that the petitioner could not have been harassed by his parking in a spot "not within easy eyeshot of" her house, but fails to explain why parking down the street in a visible location could not constitute harassment, in the context of all of the testimony of the petitioner, which was credited by the court.

¶48    Trudell makes a reference to a lack of evidence that he was aware of the petitioner's "usual running route," but the point is undeveloped and the record citation he provides for this concept does not help us understand the argument.

¶49    Trudell suggests that the evidence regarding the Devil's Lake incident could not support a harassment claim because the petitioner "did not see" Trudell at Devil's Lake and there was insufficient evidence that Trudell knew that the petitioner would be at Devil's Lake that day. These arguments are not well developed. It is sufficient to observe that the circuit court had an adequate basis to find that Trudell traveled from Dane County to Devil's Lake at a time when he knew the petitioner would be there, as part of a pattern of harassing conduct, and that she in fact became aware that he was near her at Devil's Lake.

¶50     As for the incident involving Trudell following the petitioner in his car, he argues that even if he did this (which he denied doing) it could not have been considered harassment because after following her car he "did not turn into her neighborhood," but instead turned into another neighborhood.  But of course the fact that an act is not as persistent or intense as it could have been does not establish that the act could not be deemed harassing when it is considered in the context of all of the relevant evidence.

¶51     Regarding the June 5, 2021 incident, Trudell suggests that the circuit court was obligated to find that all of his conduct was motived by a legitimate desire to prevail in family court litigation.  But he fails to support an argument that this is the only finding the court could make that would not be clearly erroneous.  Trudell fails to identify a clear error in the court's fact finding.

¶52     It is also significant that the circuit court found that Trudell falsely testified that he was not in the locations where the petitioner claimed he was on at least some occasions of allegedly harassing conduct.  This gave rise to the reasonable inference that Trudell had no legitimate, non-harassing reason to offer for his presence on those occasions.

¶53     In sum, Trudell fails to show that, when we review the evidence in the light most favorable to the injunction, the evidence was so lacking in probative value

13

and force that no reasonable circuit court could have determined from the evidence that there was a basis for the requested injunction.[4]

## II. DENIAL OF RECONSIDERATION MOTION

¶54 Trudell argues that the circuit court erroneously exercised its discretion in denying his motion for reconsideration based on a document that Trudell personally prepared by "import[ing] the raw, unaltered data" from purported tower location information for his smartphone obtained by subpoena from a mobile network operator and submitted to the circuit court 71 days after the injunction hearing. The circuit court gave several reasons for denying the reconsideration motion. We conclude that it was not an erroneous exercise of discretion for the court to conclude that this document provided an inadequate basis for the court to revisit the facts found at the injunction hearing.

### A. Legal Standards

¶55 We review a circuit court's decision resolving a motion for reconsideration under the erroneous exercise of discretion standard, under which we affirm so long as the decision shows that the court examined the relevant facts, applied a proper standard of law, and used a demonstrated rational process to reach a reasonable conclusion, even if the court could also have reasonably reached one or more different conclusions. *See **Koepsell's Olde Popcorn Wagons, Inc. v.***

---

[4] Raising a new argument on the evidence-sufficiency issue for the first time in his reply brief, Trudell suggests that the circuit court's findings are "undermined in light of the newly discovered evidence" discussed below in connection with his reconsideration motion. *See **Bilda v. County of Milwaukee***, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 (court of appeals generally does not consider arguments raised for the first time in reply brief). Even beyond the fact that this argument was not presented in Trudell's opening brief, the argument misses the mark. The circuit court did not have this evidence before it when it made the rulings challenged on this issue.

*Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Id.*, ¶44.

### B.     Additional Background

¶56     The following is pertinent additional background on this issue.

¶57     As related above, the circuit court heard evidence regarding the petition and ruled in favor of the petitioner on July 19, 2021. During the course of the hearing, the court found that there were "confusing things and discrepancies" regarding GPS data exhibits that Trudell produced in hard copy format at the hearing, and that in any case these exhibits did not "definitively establish[] that this could not have been [Trudell's] car in [the petitioner's] neighborhood." The court's findings were based in part on extensive testimony by the petitioner that, in her opinion, the exhibits were unreliable because Trudell had improperly "copy-and-pasted" and "spliced" data.

¶58     Three weeks later, on August 9, counsel for Trudell filed a motion for reconsideration, which was based in part on an affidavit submitted by Trudell. Most pertinent to the issue raised on appeal, Trudell averred that a 27-page exhibit attached to his affidavit, which he characterized as "my unaltered Google Maps Timeline documentation," reflected data that "I had on my computer during the injunction hearing but did not have printed off." He further averred that his position that he was not near the petitioner's house when she said he had been "shall also be conclusively verified by my separate, more detailed and unalterable cell phone tower signal location data[,] which I shall request from my cell phone carrier immediately upon issuing a subpoena signed by this Court."

¶59     We pause to note that the exhibit attached to the August 9 submission was clearly not "unaltered"; it plainly contained text inserted by someone, presumably Trudell, and it also did not refer to any method of authenticating or explaining the technical basis for any of the contents of the exhibit.

¶60     Then, on September 27, 71 days after the hearing, counsel for Trudell filed a "Memorandum Of Law In Support Of Motion For Reconsideration," to which was attached a 26-page exhibit purporting to reflect the location of Trudell's cell phone at various times. The exhibit was allegedly generated from data received from U.S. Cellular in response to a subpoena. However, the exhibit was not accompanied by an affidavit of any kind. Instead, the filing of counsel provided this explanation in pertinent part regarding the exhibit:

> Attached hereto as Exhibit A is a document that Respondent created. Exhibit A compiles the tower location information for various days, more particularly, days that Petitioner alleged that Respondent was at or near her or her residence. However, Exhibit A demonstrates that the tower location information contradicts these assertions. In fact, Respondent was not near Petitioner or her residence on the days that she alleged that he was.
>
> In preparing Exhibit A, Respondent took the latitude and longitude coordinates that were from a specific ping. Then, he input that information into Google Maps, which allowed him to import the raw, unaltered data. By doing so, he was able to create a map to show his whereabouts on any given day, and particularly in this cause, to refute the allegations that Petitioner made.
>
> The data received from U.S. Cellular collected 64,497 cell phone tower location pings from October 1, 2020, to July 31, 2021. On average, Respondent's cellphone carrier obtained 212 data locations per day, which Respondent argues is a very thorough and accurate record of his location and movement during that ten-month period.

¶61     Two days later, on September 29, counsel for Trudell filed with the circuit court an affidavit averring that he had obtained the subpoena from the circuit

16

court in the family court action, that he had served it on U.S. Cellular, and that he had provided the data he received from U.S. Cellular to counsel for the petitioner. However, this affidavit had nothing to say about the preparation or contents of the exhibit attached to the September 27 memorandum submitted to the court by counsel.

¶62     At a hearing on September 30 addressing the motion for reconsideration, the circuit court noted that the subpoena for the phone location data was not obtained from the circuit court presiding in the family court action until "nearly a month after the injunction was granted." The court said that Trudell "also has not made a showing as to why, through reasonable diligence, he could not have located this information earlier." The court further observed that "the information" that Trudell was attempting to offer "I think is very, very similar to the argument and the information that [Trudell] attempted to … present[] at the [injunction] hearing." The court said that it had not heard "a good argument as to why" Trudell could not have obtained the information more quickly. "I'm not persuaded that Mr. Trudell has shown that he exercised reasonable diligence to obtain the evidence earlier than he did."

¶63     As to the specifics of the self-created "map" attached to the pleading of September 27, the court noted that it "is a document that Mr. Trudell created," and also noted that "[t]he original data from US Cellular does not appear to have been filed or made available to the court," creating "an authentication issue." In other words, so far as Trudell's submissions on reconsideration reflected, Trudell sought reconsideration based solely on a document that he had personally created purporting to reflect provider data, not on authenticated records of the provider as illuminated by any technical information from any source or on a proffer of testimony from a custodian of records or expert in such data. The court made a

17

determination that the document that Trudell submitted was not newly discovered evidence because it was a different version of the same data that Trudell referred to at the injunction hearing but which he failed to present in a clear, supported manner at the injunction hearing.

## C. Analysis

¶64    We put to the side the specific reasoning of the court to the apparent effect that Trudell had only one chance to present supported, authenticated data about the location of his phone, which was during the injunction hearing.  As part of our approach on this issue, we assume without deciding all of the following:  that Trudell did not forfeit these issues by resting on his exhibits at the injunction hearing and not requesting an adjournment to allow him a chance to collect and present the data in a reliable form; that the timeline for Trudell before the injunction hearing was too tight to reasonably expect him, even exercising reasonable diligence, to have been able to obtain and present such proof in time for the hearing; and that underlying phone location data, if reliably presented as evidence, could have merited reconsideration.

¶65    Instead, we resolve this issue based on the separate reasoning of the court that the single document that Trudell presented in support of reconsideration was not sufficient to merit reconsideration.  Put differently, the record supports the court's reasonable decision that it was not obligated to rely on what his attorney referred to as Trudell's personal "import[ation of] the raw, unaltered data" to "create a map" attached to the pleading, without providing any method for the court to test the authenticity or reliability of the "map" that Trudell created.

¶66    Under the framework of WIS. STAT. §§ 909.01 and 909.015, "[t]he requirements of authentication or identification as a condition precedent to

admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Sec. 909.01. One way to establish an evidentiary foundation is through the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." Sec. 909.015(1). The barrier is not necessarily a high one; for example, authentication can be accomplished "through circumstantial evidence." *See State v. Giacomantonio*, 2016 WI App 62, ¶20, 371 Wis. 2d 452, 885 N.W.2d 394. But the document offered here did not necessarily provide the circuit court with a solid basis to determine what the relevant facts were, and it was not unreasonable of the court to determine that it did not. Put differently, the court did not have to accept at face value, without any corroborating information, Trudell's representations about the nature and contents of this document he created.

¶67 Trudell suggests that his only alternative was to submit "voluminous records" to the circuit court, but this does not make sense. It also presumably would have done Trudell little good to provide a raw "data dump" to the court. Attorneys are able to submit proper affidavits of records custodians and subject matter experts addressing large data sets in a wide variety of contexts. Further, the issue is not how Trudell might have managed this topic more effectively; the only issue is whether the circuit court was obligated to treat his self-created "map" as reliable for the purposes for which it was offered by his attorney, under the reconsideration standards stated above.

### III. SCOPE OF RESTRICTIONS

¶68 Trudell argues that the injunction is "overbroad in violation of Trudell's constitutional rights." To comport with those rights, Trudell argues, the injunction had to have the following scope, which is what the petitioner originally requested in the petition: "Prohibit [Trudell] from being within 1000 yards of [the

petitioner's] residence unless he is present for a designated placement exchange … [or if he is] present at [the] children's school and extracurricular events so long as he stays a reasonable distance from me at all times and does not communicate with me in person." We reject this argument because it is thinly developed at best, ignores pertinent parts of the record, and is not supported by the legal authority that Trudell cites.

### A.     Legal Standards

¶69     As with the last issue, we generally review a circuit court's decision regarding the scope of injunctive relief under the erroneous exercise of discretion standard. *See State v. Abbott Laboratories*, 2013 WI App 31, ¶51, 346 Wis. 2d 565, 829 N.W.2d 753. On this issue, however, Trudell's argument is that the circuit court violated his fundamental right to coparent his children, which calls for the application of constitutional law principles. *See Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, ¶16, 295 Wis. 2d 1, 719 N.W.2d 408 (interpretation of a constitutional provision is a question of law reviewed de novo); *see also Predick v. O'Connor*, 2003 WI App 46, ¶¶1, 9-10, 260 Wis. 2d 323, 660 N.W.2d 1 (whether circuit court's order "banishing" a person from a county violated the party's constitutional rights presents an issue of law).

¶70     "A natural father's interest in personal contact with his child is protected under the due process clause because of this society's belief in the protection of the familial relationship." *L.K. v. B.B.*, 113 Wis. 2d 429, 447, 335 N.W.2d 846 (1983).

¶71     Court orders "banishing" a person from certain geographic locations are not "per se constitutional violation[s]," but instead "[e]ach case must be analyzed on its own facts, circumstances and total atmosphere to determine whether

the geographic restriction" is sufficiently narrow in scope. ***Predick***, 260 Wis. 2d 323, ¶18.

### B.    Additional Background

¶72    The following is pertinent additional background on this issue.

¶73    In the petition, the petitioner requested the limitations quoted in ¶68 *supra*.  However, at the injunction hearing, the petitioner testified that she was concerned about the scope of the limitations, given her view that "[h]e's not stopping, … it's escalating."

¶74    In fashioning the scope of the injunction, the circuit court said that it would not prohibit Trudell from being in any part of the Dane County village in which the petitioner resides, because the court wanted to "narrowly tailor this to accomplish my goal in keeping" Trudell "away from" the petitioner's residence, without "unreasonably or unnecessarily curtailing [Trudell's] rights."  Instead, the court limited the restriction to the petitioner's subdivision and several area streets.

¶75    The parties entered into a stipulation that the injunction would allow Trudell contact with the petitioner when the contact is "solely for the purpose of communication regarding custody and placement of their minor children and only through Our Family Wizard, or as permitted or required by the family court presiding over" the family court action.

### C.    Analysis

¶76    Trudell's argument is imprecise and unsupported.  It may have two parts—involving his right to travel freely and his right to coparent—which we address in turn but need not address at length.

¶77     Regarding his right to travel freely, Trudell largely rests his argument that prohibiting Trudell from entering the subdivision where the petitioner resides unconstitutionally restricts his freedom of movement on *State v. Stewart*, 2006 WI App 67, 291 Wis. 2d 480, 713 N.W.2d 165.  But the facts here bear no resemblance to the discussion in *Stewart*.  That case involved a challenged condition of probation banishing the defendant from an entire township as an overly broad geographical restriction.  *Id.*, ¶¶14, 16.  The court acknowledged that this geographical limitation had the effect of "protecting the victims in this case and rehabilitating Stewart," but concluded that "it is broader than necessary to accomplish those purposes," because a no-contact provision "already offers protection to his victims."  *Id.*, ¶¶16-17. "[T]he majority of Stewart's inappropriate, criminal and threatening behavior took place in and around his home.  It was directed towards his wife, children and neighbors and not the Richmond township community at large."  *Id.*, ¶16 (footnote omitted).  No statement of the court in *Stewart* requires reversal in this case.  Here, the circuit court credited testimony that Trudell intentionally intimidated the petitioner by parking in various locations around her house.  Trudell fails to explain how the subdivision-wide restriction was overly broad to meet that concern.

¶78     Regarding his right to coparent, Trudell does not even attempt to address the petitioner's testimony explaining the reasons that, by the time of the injunction hearing, she had doubts about the scope of the limitations requested in the petition.  Nor does Trudell acknowledge that the parties stipulated to the nature of contact that he could have with the petitioner in order to facilitate his contact with his children.  More importantly, beyond all that, Trudell does not explain how the stipulation, which allows him to arrange for contact with his children, unconstitutionally infringes on his constitutional right to coparent.

22

**CONCLUSION**

¶79 For all of these reasons, we affirm the injunction, including its scope, and the circuit court's decision to deny the motion for reconsideration.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.